**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **PETER FLORES CABALLERO,** ) | **CASE NO.  26-697** |
| ) | |
| Petitioner ) | **PETITION FOR WRIT OF HABEAS** |
| ) | **CORPUS UNDER 28 U.S.C. § 2241** |
| vs. ) | **AND COMPLAINT FOR INJUNCTIVE** |
| ) | **AND DECLARATORY RELIEF** |
| **TODD LYONS,** Acting ) | |
| Director, ) | |
| Immigration and Customs ) | |
| Enforcement, **KRISTI** ) | |
| **NOEM,** ) | |
| Secretary of United ) | |
| States Department of ) | |
| Homeland Security, ) | |
| **KENNETH GENALO,** ) | |
| Immigration and Customs ) | |
| Enforcement, New York ) | |
| Field Office Director, ) | |
| **ANTHONY J. LaROCCO,** ) | |
| Nassau County Sheriff, ) | |
| **PAMELA BONDI,** United ) | |
| States Attorney ) | |
| General, ) | |

Respondents.

## **INTRODUCTION**

1. Petitioner, Peter Flores Caballero, ("Petitioner" or "Mr. Flores"), is in the physical custody of the Respondents at the Nassau County Correctional Center. Exhibit G: ICE Inmate Locator.

2. He is unlawfully detained because the DHS and the Department of Justice ("DOJ") have wrongfully imposed mandatory detention without bond merely because he entered the United States without inspection.

3. Petitioner entered the U.S. in 2006. He has lived for several years in the tri-state area. He is married to a US Citizen and they are raising his three US citizen children ages 1, 2 and 11.

4. Petitioner has no criminal convictions and no history of immigration violations other than his entry. The I-130 petition for alien relative by his wife has been approved.

5. Petitioner is a trucker who operates as an independent contractor.

6. Petitioner is charged at the Immigration Court ("IC") with having entered the U.S. without admission or inspection ("EWI"). See 8 U.S.C. §1182(a)(6)(A)(i).

7. Respondents are holding Petitioner without a bond hearing pursuant to their unlawful policy subjecting all persons who

EWI to mandatory detention under §1225(b)(2)(A) and <u>Matter of Yajure Hurtado</u>, 29 I&N Dec. 216 (BIA 2025).

8. Petitioner's detention without bond violates Due Process, the plain language of the Immigration and Nationality Act ("INA") and the Administrative Procedures Act ("APA").

9. The plain language of the INA, 8 U.S.C. §1226 and decades of precedent make Petitioner eligible for a bond.

10. Constitutional law requires that the Government bear the burden by clear and convincing evidence at the bond hearing to prove the Petitioner is a flight risk or danger to the community: the DOJ's caselaw placing the burden of proof on the Petitioner is unlawful.

11. Due Process and fair hearings are now absent from the immigration court. Facts that have universally been considered positive factors, such as long presence in the U.S. and steady employment, are now treated as negative factors. Relationships such as spouses, parents, and children that have universally been considered strong ties to the community are now disregarded. Petty traffic offenses and dismissed criminal charges that have always been non-probative are now considered proof of danger to the community. The DOJ employees, officially called immigration judges, who are supposed to make individualized determinations, are now referred to as deportation judges who know that if they do not abide by the Executive Branch's Detain-and-Deport

Policies they will be fired. At this time, the hearings in Immigration Court are not individualized analysis, but rather application of blanket policies to nearly all individuals.

12.    Accordingly, Petitioner seeks a writ of habeas corpus ordering his immediate release, that this Court set a reasonable bond, or that a bond hearing is ordered within five days in which the burden of proof is on the government to prove by clear and convincing evidence that Petitioner is a flight risk or danger to the community.

## II.  JURISDICTION AND VENUE

13.    This Court has jurisdiction under 28 U.S.C. §2241(c)(5)(habeas corpus), 28 U.S.C. 1331 (federal question), and Article I, section 9, clause 2 of the U.S. Constitution (the Suspension Clause).

14.    This Court may grant relief pursuant to 28 U.S.C. §2241, the Declaratory Judgment Act, 28 U.S.C. §2201, et. seq., and the All Writs Act, 28 U.S.C. §1651.

15.    Venue is proper in the Eastern District of New York because Petitioner is located at the Nassau County Correctional Center, under color of the authority of the United States, in violation of the Constitution and laws thereof, 28 U.S.C. §§1391, 2241, and because Respondent's potential and likely transfers to varying jurisdictions would prevent any other court from obtaining jurisdiction.

16.     Venue is further proper because a substantial part of the events or omissions giving rise to Petitioner's claims occurred in this district, where Petitioner is, or was, in Respondent's custody. 28 U.S.C. §1391€.

### III. REQUIREMENTS OF 28 U.S.C. §2243

17.     The Court must grant the petition for writ of habeas corpus or order Respondents to show cause "forthwith" unless the Petitioner is not entitled to relief. If an order to show cause issued, Respondents must file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed."

### IV. PARTIES

18.     Petitioner is unlawfully detained by DHS at Nassau County Correctional Center in East Meadow, New York.

19.     Respondent Todd Lyons is the Acting Director of Immigration and Customs Enforcement ("ICE"). He is one of Petitioner's custodians and is named in his official capacity.

20.     Respondent Kristi Noem is the Secretary of Homeland Security and is Petitioner's ultimate custodian. She is sued in her official capacity.

21.     Respondent Kenneth Genalo is the Field Office Director for ICE New York Field Office. He is one of Petitioner's custodians and is named in his official capacity.

22.     Respondent Bill Leeper is the Nassau County Sheriff in charge of the Nassau County Correctional Center where Petitioner is detained. He is named in his official capacity.

23.     Respondent Pamela Bondi is the Attorney General of the United States. She oversees the EOIR and is sued in her official capacity.

### V. FACTS

24.     Mr. Flores entered the United States without inspection in 2006. He was not apprehended by the DHS until approximately February 6, 2026, after the vehicle he was driving in broke down and he had to call a tow truck.

25.     Since 2006, Mr. Flores has resided in the U.S., and presently resides in the tri-state area. He is a truck driver working as an independent contractor. He has no criminal convictions. He is married to a U.S. citizen. He has three US citizen children, ages 1, 2 and 11, who live with him.

26.     Following DHS apprehension and detention, DHS initiated removal proceedings against Petitioner in the Immigration Court based on 8 U.S.C §1229a and an allegation of inadmissibility pursuant to 8 U.S.C. §1182(a)(6)(A)(i) as

someone who entered the U.S. without inspection. Exhibit F:
Notice to Appear.

27.    The Immigration Court has become a forum without Due
Process, a forum that does not provide adequate time for non-
citizens to prepare their defenses and that disregards
decades of law and precedent because IJs who fail to abide by
the unlawful detain and deport policies of the Department of
Justice and the Executive branch are terminated from
employment.

28.    Multiple attorneys provide details about the absence of
Due Process in the immigration courts in multiple
jurisdictions. See Exhibit A: Attorney submissions. Publicly
available and reliable news sources document the firing of
immigration judges who rule in favor of non-citizens. See
Exhibit B: News articles. The Department of Justice
advertises for Deportation Judges, not immigration judges.
See Exhibit C: DOJ advertisement.


## VI. LEGAL FRAMEWORK

29.    Immigration detention should not be used as a punishment
and should only be used when, under an individualized
determination, a noncitizen is a flight risk because they are
unlikely to appear for immigration court or a danger to the
community. Zadvydas v. Davis, 533 U.S. 678, 690 (2001).

30.    Noncitizens in immigration proceedings are entitled to Due Process under the Fifth Amendment of the U.S. Constitution. Reno v. Flores, 507 U.S. 292, 306 (1993).

31.    The Immigration and Nationality Act ("INA") establishes various procedures through which individuals may be detained pending a decision on whether the noncitizen is to be removed. 8 U.S.C. § 1226(a).

32.    Removal proceedings described in section 240 of the INA are used to determine whether individuals, such as Petitioner, should be removed from the United States. See 8 U.S.C. § 1229a.

33.    Immigration detention is a form of civil confinement that "constitutes a significant deprivation of liberty that requires due process protection." Addington v. Texas, 441 U.S. 418, 4253 (1979).

34.    8 U.S.C. § 1226(a) provides for the general detention scheme of non-criminal non-citizens.

35.    Under § 1226(a), an individual may be released if he does not present a danger to persons or property and is not a flight risk. Zadvydas v. Davis, 533 U.S. 678, 690 (2001); Matter of Guerra, 24 I&N Dec. 37 (BIA 2006).

36.    The INA prescribes three basic forms of detention for the vast majority of noncitizens in removal proceedings.

37.    First, 8 U.S.C. § 1226 authorizes the detention of noncitizens in removal proceedings before an IJ. See 8 U.S.C.

§ 1229a. Individuals in § 1226(a) detention are generally entitled to a bond hearing at the outset of their detention, see 8 C.F.R. §§ 1003.19(a), 1236.1(d), while noncitizens who have been arrested, charged with, or convicted of certain crimes are subject to mandatory detention, see 8 U.S.C. § 1226(c).

38.    Second, the INA provides for mandatory detention of noncitizens subject to expedited removal under 8 U.S.C. § 1225(b)(1) and for other recent arrivals seeking admission referred to under § 1225(b)(2).

39.    Last, the INA also provides for detention of noncitizens who have been ordered removed, including individuals in withholding-only proceedings, see 8 U.S.C. § 1231(a)-(b).

40.    This case concerns the detention provisions at §§ 1226(a) and 1225(b)(2).

41.    The detention provisions at § 1226(a) and § 1225(b)(2) were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) of 1996, Pub. L. No. 104--208, Div. C, §§ 302-03, 110 Stat. 3009-546, 3009-582 to 3009-583, 3009-585. Section 1226(a) was most recently amended earlier this year by the Laken Riley Act, Pub. L. No.119-1, 139 Stat. 3 (2025).

42.    Following the enactment of the IIRIRA, EOIR drafted new regulations explaining that, in general, people who entered the country without inspection were not considered detained

under § 1225 and that they were instead detained under § 1226(a). See Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997).

43.    Thus, in the decades that followed, most people who entered without inspection and were placed in removal proceedings received bond hearings, unless their criminal history rendered them ineligible pursuant to 8 U.S.C. § 1226(c). That practice was consistent with many more decades of prior practice, in which noncitizens who were not deemed "arriving" were entitled to a custody hearing before an IJ or other hearing officer. See 8 U.S.C. § 1252(a) (1994); see also H.R. Rep. No. 104-469, pt. 1, at 229 (1996) (noting that § 1226(a) simply "restates" the detention authority previously found at § 1252(a)).

44.    On July 8, 2025, ICE, "in coordination with" DOJ, announced a new policy that rejected well-established understanding of the statutory framework and reversed decades of practice.

45.    The new policy, entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission," claims that all persons who entered the United States without inspection shall now be subject to mandatory detention provision under § 1225(b)(2)(A). See Exhibit A. The policy

applies regardless of when a person is apprehended and affects those who have resided in the United States for months, years, and even decades.

46.    On September 5, 2025, the DOJ, in the form of the Board of Immigration Appeals, adopted this same position in a published decision, Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025). There, the Board held that all noncitizens who entered the United States without admission or parole are subject to detention under § 1225(b)(2)(A) and are ineligible for IJ bond hearings.

47.    Since Respondents adopted their new policies, virtually every one of the hundreds of courts to review the issued has concluded that mandatory detention for those residing in the United States is unlawful. See Exhibit D: Arif Demirel v. Federal Detention Center Philadelphia, (E.D.Pa 2025) Case 2:25-cv-05488-PD, Appendix A: Appendix of Cases.

48.    Section 1226(a) applies by default to all persons "pending a decision on whether the [noncitizen] is to be removed from the United States." These removal hearings are held under § 1229a, to "decid[e] the inadmissibility or deportability of a[] [noncitizen]."

49.    The text of § 1226 also explicitly applies to people charged as being inadmissible, including those who entered without inspection. See 8 U.S.C. § 1226(c)(1)(E). Subparagraph (E)'s reference to such people makes clear that,

by default, such people are afforded a bond hearing under subsection (a). As the <u>Rodriguez Vazquez</u> court explained, "[w]hen Congress creates 'specific exceptions' to a statute's applicability, it 'proves' that absent those exceptions, the statute generally applies." <u>Rodriguez Vazquez</u>, 779 F. Supp. 3d at 1257 (citing <u>Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.</u>, 559 U.S. 393, 400 (2010)); see also Gomes, 2025 WL 1869299, at *7.

50.     Section 1226 therefore leaves no doubt that it applies to people who face charges of being inadmissible to the United States, including those who are present without admission or parole.

51.     By contrast, § 1225(b) applies to people arriving at U.S. ports of entry or who recently entered the United States. The statute's entire framework is premised on inspections at the border of people who are "seeking admission" to the United States. 8 U.S.C. § 1225(b)(2)(A). Indeed, the Supreme Court has explained that this mandatory detention scheme applies "at the Nation's borders and ports of entry, where the Government must determine whether a[] [noncitizen] seeking to enter the country is admissible." <u>Jennings v. Rodriguez</u>, 583 U.S. 281, 287 (2018).

52.     Although § 1226(a) is silent as to who bears the burden of proof at a bond hearing, the BIA has unconstitutionally placed the burden on non-citizens. <u>In re Adeniji</u>, 22 I&N Dec.

1102, 1116 (BIA 1999) (holding that "respondent must demonstrate that his release would not pose a danger to property or persons, and that he is likely to appear for any future proceedings").

53.    Until the immigration reforms of 1996, the Board of Immigration Appeals, which is a part of the Department of Justice, interpreted the statute's discretionary authority as involving a presumption against detention and the Government shouldered the burden of proving that the noncitizen's detention was warranted. Lopez v. Decker, 978 F.3d 842, 848 (2nd Cir. 2020) (describing the history of § 1226(a)); Matter of Patel, 15 I&N Dec. 666 (BIA 1976) ("An alien generally is not and should not be detained or required to post bond except on a finding that he is a threat to national security or that he is a poor bail risk."); Alina Das, Immigration Detention: Information Gaps and Institutional Barriers to Reform, 80 U. Chi. L. Rev. 137, 157-58 (2013).

54.    After passage of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009 (1996), the former Immigration and Naturalization Service (INS) amended the regulations that changed the standard for the initial post-arrest custody determination made by immigration officers. Lopez v. Decker, 978 F.3d at 849. The noncitizen is now required "to demonstrate to the satisfaction of the [immigration] officer"

that the noncitizen is neither a flight risk nor a danger to property or persons, and that he is likely to appear at future hearings. 8 C.F.R. § 236.1(c)(8).

55.    In enacting § 236.1(c)(8), the INS acknowledged the sharp departure from long established procedures. Alina Das, Immigration Detention: Information Gaps and Institutional Barriers to Reform, 80 U. Chi. L. Rev. at 156 (citing to Final Rule: Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (1997)).

56.    Later, the BIA began applying the standard in § 236.1(c)(8) to reviews by immigration judges of an arresting officer's decision to detain a noncitizen. Lopez v. Decker, 978 F.3d at 849 (citing to Matter of Adeniji, 22 I&N Dec. 1102, 1112 (1999) and Matter of Guerra, 24 I&N Dec. 37, 38 (BIA 2006)). Since Adeniji, the BIA has repeatedly reaffirmed that the burden should be on non-citizens. See Matter of Fatahi, 26 I&N Dec. 791, 793 (BIA 2016); In re Guerra, 24 I&N Dec. 37, 40 (BIA 2006) ("[t]he burden is on the alien to show to the satisfaction of the [immigration judge] that he or she merits release on bond.").

57.    To be released under § 1226(a), a noncitizen "must establish to the satisfaction of the Immigration Judge, or the Board, that he or she does not present a danger to persons or property, is not a threat to the national security, and

does not pose a risk of flight." <u>Matter of Guerra</u>, 24 I&N Dec. at 38 (citing <u>Matter of Adeniji</u>, supra.). This regulatory rule, however, runs counter to the constitutional imperative that liberty is the norm. The Supreme Court has made plain that "commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." <u>Addington v. Texas</u>, 441 U.S. 418, 425 (1979).

58.    The Due Process Clause requires a constitutionally adequate bond hearing. "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty" that the Due Process Clause protects. <u>Zadvydas v. Davis</u>, 533 U.S. 678, 690 (2001). Detention must "bear [a] reasonable relation to the purpose for which the individual [was] committed." Id. at 690 (quoting <u>Jackson v. Indiana</u>, 406 U.S. 715, 738 (1972)).

59.    The Supreme Court has held that the Due Process Clause "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." <u>Zadvydas v. Davis</u>, 533 U.S. at 693. Throughout the Court's civil detention jurisprudence, it has always required the government to bear the burden of proof. <u>Addington v. Texas</u>, 441 U.S. 418 (1979). Thus, the Court has required that civil detention be the "exception", not the norm. See <u>United States v. Salerno</u>, 481 U.S. 739, 755 (1987)

(allowing for pretrial detention in "carefully limited" circumstances).

60.    In Addington v. Texas, 441 U.S. 418 (1979), the Court held that in civil commitment proceedings, the government's burden of proof must be "equal to or greater that the 'clear and convincing' standard" to meet due process guarantees. Addington v. Texas, 441 U.S. at 433. The appellant in Addington, a mental patient who had been committed indefinitely to a state mental hospital, sought review of the decision from the Texas Supreme Court which held that a preponderance of the evidence standard satisfied the due process requirement. Addington v. Texas, 441 U.S. at 421-22.

61.    At a minimum, due process requires "adequate procedural protections" to ensure that the Government's asserted justification for physical confinement "outweighs the individual's constitutionally protected interest in avoiding physical restraint." Zadvydas v. Davis, 533 U.S. at 690 (quoting Kansas v. Hendricks, 521 U.S. 346, 356 (1997)).

62.    In civil detention cases, the Supreme Court "repeatedly has recognized that civil commitment for *any* purpose constitutes a significant deprivation of liberty." Singh, 638 F.3d 1196, 1204-05 (9th Cir. 2011) (quoting Addington v. Texas, 441 U.S. 418, 425 (1979)) (emphasis in original).

63.    In particular, civil detention is impermissible without an individualized hearing before a neutral decision maker

that tests the Government's justification for imprisonment. See <u>United States v. Salerno</u>, 481 U.S. 739, 750-751 (1987)(upholding civil pretrial detention of individuals charged with crimes only upon individualized findings of dangerousness or flight risk at custody hearings); <u>Foucha v. Louisiana</u>, 504 U.S. 71, 81-83 (1992)(requiring individualized finding of mental illness and dangerousness for civil commitment); <u>Kansas v. Hendricks</u>, 521 U.S. at 357 (upholding civil commitment of sex offenders after jury trial on lack of volitional control and dangerousness).

64.    The Ninth Circuit and other district courts have held that immigration detainees are entitled to bond hearings at which <u>the Federal Government</u> bears the burden to prove by clear and convincing evidence that detainees would be a flight risk or danger to the community. <u>See e.g., Singh</u>, 638 F.3d at 1204-1205; <u>Pensamiento v. McDonald</u> 315 F.Supp. 3d 684, 692 (D.Mass 2018)(holding that due process requires the burden of proof be placed on the government in custody redetermination hearings for non-criminal aliens); <u>Alvarez Figueroa v. McDonald</u>, Civil Action No. 18-100097-PBS, 2018 U.S. Dist. LEXIS 80781, at *15-16 (D.Mass May 14, 2018)("The <u>Zadvydas</u> Court then cited to criminal pretrial detention and civil commitment cases, making it clear that one important procedural protection for preventive detention is the placement of the burden of proof on the government."; <u>Doe v.</u>

Tompkins, Case No. 18-cv-12266-PBS, 2019 U.S. Dist. LEXIS
22616, at *4 (D. Mass. Feb. 12, 2019)(holding that due process
requires that the burden of proving that the respondent is
dangerous and is a flight risk be placed on the government in
§1226(a) custody redetermination hearings); Diaz-Ortiz v.
Tompkins, Case No. 18-cv-12600-PBS, 2019 U.S. Dist. LEXIS
14155, at *3-4 (D. Mass Jan. 29, 2019); Martinez v. Decker,
No. 18-cv-6527-JMF, 2018 U.S. Dist. LEXIS 178577, at *13
(S.D.N.Y. Oct. 17, 2018)(concluded that "due process requires
the Government to bear the burden of proving that detention
is justified at a bond hearing under Section 1226(a)."); Darko
v. Sessions, 342 F.Supp.3d 429, 436 (S.D.N.Y 2018)(same;
further, "the Court concludes that the government must bear
the burden by clear and convincing evidence."); Haughton v.
Crawford, 221 F.Supp. 3d 712, 713-17 (E.D.Va. 2016)("the
significant deprivation of liberty warrants the robust
procedural protections afforded by requiring the government
to demonstrate by clear and convincing evidence that
petitioner's ongoing detention is appropriate to protect the
community and ensure petitioner's appearance at future
proceedings."); Portillo v. Hott, 322 F.Supp.3d 698, 2018 WL
3237898, at *8 *n.9 (E.D.Va 2018)(reaffirming Haughton as
"good authority").

65.    Petitioner contends, that in the present environment, in
which the Executive Branch, the Department of Justice as a

whole, especially the Immigration Courts, have eschewed their duty to do justice and stated publicly their disregard of any intention to be impartial or neutral through a series of published decisions by the Board of Immigration Appeals all limiting rights and relief in removal proceedings, through revocation of protections afforded to non-citizens from countries, such as Haiti and Sudan that are plainly unsafe, through advertisements for "Deportation Judges" rather than "Immigration Judges," through firing dozens or hundreds of experienced immigration judges and replacing them with military lawyers who have no experience in immigration law whatsoever, and in at least one circumstance firing one of those military lawyers within 30 days because he granted too many asylum applications, it is impossible to obtain a fair and impartial hearing in the immigration court because immigration judges know they will be fired if they decide in favor of the non-citizens and this Court must directly address custody.

## VII. CLAIMS FOR RELIEF

### COUNT ONE

### Violation of the INA

66.    Petitioner incorporates by reference the allegations of facts set forth in the preceding paragraphs.

67.     The mandatory detention provision at 8 U.S.C. §
1225(b)(2) does not apply to all noncitizens residing in the
United States who are subject to the grounds of
inadmissibility. As relevant here, it does not apply to those
who previously entered the country and have been residing in
the United States prior to being apprehended and placed in
removal proceedings by Respondents. Such noncitizens are
detained under § 1226(a), unless they are subject to §
1225(b)(1), § 1226(c), or § 1231.

68.     The application of § 1225(b)(2) to Petitioner unlawfully
mandates his continued detention and violates the INA.

## COUNT TWO

### Violation of Due Process

**69**.     Petitioner repeats, re-alleges, and incorporates by
reference each and every allegation in the preceding
paragraphs as if fully set forth herein.

**70**.     The government may not deprive a person of life, liberty,
or property without due process of law. U.S. Const. amend. V.
"Freedom from imprisonment—from government custody,
detention, or other forms of physical restraint—lies at the
heart of the liberty that the Clause protects." Zadvydas v.
Davis, 533 U.S. 678, 690 (2001).

**71**.     Petitioner has a fundamental interest in liberty and
being free from official restraint.

**72.**    The government's detention of Petitioner without a bond determination in which it is the government's burden to prove by clear and convincing evidence he is a flight risk or danger to others violates his right to due process.

## COUNT THREE

**Procedural Due Process — Evidence Fails to Show Flight Risk**

73.    Petitioner re-alleges and incorporates herein by reference every allegation set forth in the preceding paragraphs.

74.    Petitioner's detention is unlawful and violates his right to due process because the Government's evidence that Petitioner is a flight risk fails as a matter of law.

75.    The Court should release the Petitioner or conduct its own custody determination hearing.

## COUNT FOUR

**Administrative Procedure Act — Contrary to Law and Arbitrary and Capricious Agency Policy**

76.    Petitioner re-alleges and incorporates herein by reference every allegation set forth in the preceding paragraphs.

77.    The APA provides that a "reviewing court shall...hold unlawful and set aside agency action, findings, and conclusions found to be...arbitrary and capricious, an abuse

of discretion, or otherwise not in accordance with law." 5 U.S.C. §706(2)(A).

78.    The BIA's determination that noncitizens bear the burden of proof in immigration bond hearings is unlawful and conflicts with Supreme Court law.

79.    Respondents have failed to articulate reasoned explanations for their reading of the INA, have considered factors that Congress did not intend to be considered, have entirely failed to consider important aspects of the problem, and have offered explanations for their decisions that run counter to the evidence, the law and the Respondent's own policies and precedents.

80.    Imposing the burden of proof on noncitizens detained under §1226(a) is arbitrary, capricious and not in accordance with law. As such it violates the APA.  See 5 U.S.C. §706(2). Further, their refusal to provide Petitioner with a constitutionally adequate bond hearing violates §706(1) of the APA.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully request the Court to:

a. Assume jurisdiction over this matter;

b. Order that Petitioner not be transferred to another jurisdiction other than the Eastern District of New York, while this petition is pending;

c. Issue an Order to Show Cause ordering Respondents to show cause why this Petition should not be granted within three days;

d. Declare that Petitioner's detention was unlawful in violation of Due Process and the INA and order Petitioner's immediate release;

e. Alternatively, declare that Petitioner's detention without an individualized bond hearing is unlawful in violation of Due Process and the INA and order such a hearing be scheduled within two days to be heard within five days with the burden of proof on the Government to prove by clear and convincing evidence that Petitioner is a flight risk or danger to the community;

f. Order that no conditions that constitute de facto custody, such as house arrest, geographic limitations, or GPS monitoring, be imposed upon Petitioner's release;

g. Order that ICE secures and pays for his transportation back to Petitioner's home in New York immediately upon order of release or payment of bond;

h. Order that Respondents are prohibited from re-detaining Petitioner absent advance authorization from this Court;

i. Award Petitioners attorney's fees and cost under the Equal Access to Justice Act ("EAJA"), as amended, 28 U.S.C. §2412, and on any other basis justified by law;

j. Grant any other and further relief that this Court deems just and proper.


Respectfully submitted,


Date: February 7, 2026                    By: /s/ Eric M. Mark
                                          Eric M. Mark
                                           Law Office of Eric M. Mark
                                          96 Summer Ave., Fl. 1
                                          Newark, NJ 07104
                                          Tel: (973) 306-4246
                                          Email: EricM@ericmarklaw.com


                                          Attorney for Petitioner