

**Matthew J. Archambeault, Esq.**
Direct: 215-599-2189
Fax: 215-790-6242
mja@archambeaultlaw.com

December 12, 2025

### <u>AFFIDAVIT OF MATTHEW J. ARCHAMBEAULT</u>

I swear, under the penalty of perjury, the following is true and correct. I have been a practicing immigration attorney for over 23 years. I practice primarily in removal defense, including the representation of detained individuals. I have appeared in immigration courts in Pennsylvania, New Jersey, New York, Maryland, Florida, Georgia, North Carolina, Texas, Louisiana, Colorado, California, Washington, Puerto Rico, St. Thomas, and St. Lucia over my career. I have also represented immigrants in federal court at both the District and Circuit levels.

I write this affidavit for general use for my colleagues for submission in any court proceedings they feel appropriate.

I have represented hundreds of clients over the years and done scores of bond redetermination hearings. Under the current administration, bond redeterminations have undergone a noticeable shift, most notably in the issuance of the BIA precedent decision *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025) . This decision illegally concluded that a vast swath of immigrants, who entered without inspection, were subjected to mandatory detention pursuant to INA 235(b)(2), and not eligible for bond. Decades of practice and legal precedent found the same individuals eligible for bond and detained under INA 236(a). Hundreds of federal district courts have ruled against the administration following a flood of habeas corpus petitions nationwide. The result of this litigation has been that immigrants are either released or afforded an opportunity to have a bond hearing before an immigration judge.

I represent Jorge Perez Florez in both immigration court and the New Jersey District Court (case no. 2-25-cv-17865-SDW). Mr. Perez Florez was detained by ICE on November 24, 2025, and transported to the Elizabeth Detention Center in Elizabeth, New Jersey. I filed a habeas corpus petition on his behalf on the same day, and the Honorable Susan D. Wigenton of the New Jersey District Court issued a text order directing that a bond hearing be held by December 1, 2025. Immigration Judge Ramin Rastegar conducted a bond hearing on December 1, 2025, at the Elizabeth Immigration Court in Elizabeth, New Jersey.

Mr. Jorge Perez Florez is a Mexican immigrant who has been in the United States for more than 18 years, lives with his long-term partner and their 15-year-old U.S. citizen daughter in Maple Shade, New Jersey. Mr. Perez Florez has resided at the Maple Shade, New Jersey, address for more than 8 years and in the immediate area for the entirety of his time in the United States. Mr. Perez Florez has never been arrested in the United States or anywhere else in the world. Mr. Perez Florez is eligible to apply for Cancellation of Removal for Certain Non-

216 Haddon Avenue, Suite 402, Haddon Township, NJ 08108
www.archambeaultlaw.com

Permanent Residents, as he has been in the United States for more than ten years, has a US citizen child who would suffer extreme and unusual hardship if he were removed, and has been a person of good moral character and worthy of discretion. Mr. Perez Florez's US citizen daughter had been recently hospitalized for anxiety disorder and was beginning treatment. Mr. Perez Florez had numerous persons write on his behalf, and a US citizen sponsor was prepared to post any bond issued by the immigration judge.

The Department of Homeland Security raised the following negative factor: Mr. Perez Florez had previously attempted to enter the United States more than 18 years ago, was voluntarily returned, and then re-entered undetected. DHS also concluded that Mr. Perez had received a traffic ticket in 2009, when it appears he did not have a license, as an indicator of dangerousness. DHS further questioned a "learner's permit" from Maryland obtained by Mr. Perez Florez, despite his never appearing to live in Maryland.

These sets of facts would traditionally have earned Mr. Perez Florez a bond, as his lack of criminal history indicates he is not a danger to the community, and his long-term, stable residency in the United States with a family, relief from removal available, and support from the community would indicate he is not a flight risk. In my professional experience, one would expect a bond ranging from $2,500 to $10,000. This was not the case this time.

Immigration Judge Rastegar ruled that he posed a danger to the community and a flight risk so significant that no amount of bond would ensure his appearance for deportation if he lost his case. Immigration Judge Rastegar refused to explain why Mr. Perez Florez was a flight risk, indicating we could read it in his bond memorandum if we appealed. He did explain that Mr. Perez Florez's long-term residency here was a negative factor, as he never attempted to "fix" his immigration status, despite the fact that no options for doing so existed. After extensive questioning, Judge Rastegar concluded that Mr. Perez Florez was not credible based on his receiving a "driver's license" from Maryland, even though it was apparent he never lived there, and questions regarding an educational program Mr. Perez Florez completed in Camden, NJ. Judge Rastegar also held the fact that no applciation for relief had not been submitted to the immigraiton court, despite the fact that he had yet to appear for his first initial master calendar hearing (bond proceedings are separate and distinct from removal proceedings), which was scheduled for December 8, 2025 and pleadings on the allegations alleged by the Department of Homeland Security had not been completed. Judge Rastegar refused to recognize Mr. Perez Florez's long-term, committed relationship with the mother of their child because they were not married. Lastly, Judge Rastegar concluded that, because there was scant documentation of the medical condition affecting his 15-year-old USC daughter, he could not meet his burden to approve any Cancellation of Removal Application submitted, and that no amount of bond would be sufficient to ensure Mr. Perez Florez would appear for his ordered removal. Judge Rastegar did not even consider other restrictions on Mr. Perez Florez's liberty that could have ensured his compliance, such as electronic monitoring and/or reporting to ICE.

In my 23-year professional career, I have never had a bond flatly denied under similar facts. It is clear that I am not alone. The New Jersey AILA listserve is replete with similar, and even more egregious examples of bond denials from the judges at the Elizabeth Immigration Court and other courts across the country. I observed a bond hearing for an immigrant who has been in the United States for over 20 years, several US citizen children, one with a serious heart

condition, and no criminal record, denied a bond by Immigration Judge Wilson, finding he was a flight risk because he resided so long in the United States without being detected and that no amount of bond would be sufficient to ensure he complied with a deportation order. Now immigration judges are using immigrants' long-term residency and deep ties to the community as evidence of their flight risk. This is not normal.

Despite the losses of over 200 federal district court cases on the issue of detention pursuant to INA 235(b)(2), DHS persists in illegally denying immigrants their statutory right to a bond hearing, causing the current flood of litigation that is taking the time of US Attorneys who could be working on essential cases affecting our security as a nation, and time away from District Court judges and their staff. DHS has no incentive to change its practice if the result is immigrants spending thousands of dollars for legal representation and a rigged bond hearing, designed only to deny deserving immigrants the ability to receive a bond and return to their families and community as Congress intended.

We implore District Court judges to address this issue by either ordering the straight release from detention when it is shown that the detention is illegal, or conducting their own bond analysis and making their own determination regarding the issuance of bond, the amount, and any other restrictions the Court deems necessary.

We sincerely appreciate the Court's attention to this matter.

Respectfully,
/s/Matthew J. Archambeault
Matthew J. Archambeault
Law Office of Matthew J. Archambeault
216 Haddon Avenue, Suite 402
Haddon Township, NJ 08108
215-599-2189
mja@archambeaultlaw.com

**AFFIDAVIT OF ADRIANA MITCHELL, ESQ.**

I am the attorney representing Mr. Delgado-Villegas in Immigration Court.

On December 4, 2025, the Honorable District Court Judge Paul S. Diamond granted Mr. Delgado-Villegas's *habeas corpus* petition and ordered that a bond hearing on his case be held no later than December 11, 2025.

On December 10, 2025, at or around 9:00 a.m., I appeared in Immigration Court in Newark, New Jersey, by video for a bond reconsideration hearing. The bond hearing was conducted by the Immigration Judge Tamar Wilson.

At the beginning of the hearing, I argued that Mr. Delgado-Villegas, who has been present in the United States for more than twenty-five years, has no criminal history, is gainfully employed, and is the father of three U.S.-citizen children, is neither a risk of flight nor a danger to the community, and that he should be released on bond. I stated that my client has strong incentives to participate in his future court hearings because he is *prima facie* eligible for immigration relief in the form of Cancellation of Removal for Non-Lawful Permanent Residents.

In response, the U.S. Immigration and Customs Enforcement ("ICE") attorney, Keith Hoppes, argued that, even though he did not believe Mr. Delgado-Villegas is currently a risk of flight, he had concerns that Mr. Delgado-Villegas might become a risk of flight in the event he was to lose his immigration case.

The Immigration Judge orally denied bond, finding that Mr. Delgado-Villegas is a risk of flight because, as she stated, "he resided in the United States for more than twenty-five years undetected" without applying for any immigration relief.

I pointed out that Mr. Delgado-Villegas was not eligible for any relief, and that he became eligible for Cancellation of Removal only after being placed in removal proceedings.

The Immigration Judge then went on to justify her finding of risk of flight by expressing skepticism regarding Mr. Delgado-Villegas's chances of prevailing on his application for Cancellation of Removal. She also stated that Mr. Delgado-Villegas had lived at his current address "for only three years" and had not filed tax returns. She suggested that he either lied about or underreported his income because, in her opinion, the amount he was making was not enough to support his family.

Ultimately, the Immigration Judge found that Respondent presents a risk of flight and denied bond. I reserved appeal, and the Immigration Judge stated that the appeal is due on January 9, 2026.

The judge failed to consider any alternative to detention to mitigate what she perceived as a flight risk, even though my client has a bond sponsor, a clean record, solid ties to the United States and incentives to appear in court and fight his case. Based on information and believes, Mr. Delgado-Villegas' case is not isolated, but part of a pattern of conduct.

**VERIFICATION**

I, Adriana Mitchell, Esq., hereby verify that the statements contained therein are true and correct to the best of my knowledge, information, and belief, based upon my personal recollection and the notes I prepared immediately following Mr. Gabriel Delgado-Villegas's bond reconsideration hearing on December 10, 2025.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 10th day of December 2025, in Philadelphia, Pennsylvania

Adriana Mitchell
PA Bar Number 323243

## Affidavit of Alexis M. Price

My name is Alexis M. Price. I am a practicing immigration attorney licensed before the New Jersey Bar (Bar No. 496882025). My practice includes extensive work in detained and non-detained dockets across multiple jurisdictions, including the Elizabeth Immigration Court, the Philadelphia Immigration Court, and related detention facilities.

For attorneys who regularly practice before EOIR—particularly within detained dockets—it has become increasingly clear that the Immigration Court has taken a severe departure from longstanding practice and interpretation of the Immigration and Nationality Act (INA) and controlling BIA precedent. Throughout recent months, practitioners have observed rapidly shifting regulatory standards, inconsistent adjudications, opaque procedural policies, and a systemic restriction of access to bond and other procedural protections. In my experience, these trends have become markedly pronounced over the last several months, with direct and significant impact on Respondents' ability to obtain fair and meaningful review.

I have represented numerous detained individuals in proceedings before the Immigration Court, including individuals with strong equities, fixed residences, no criminal history, and demonstrated compliance with all immigration obligations. Despite these facts, nearly all of the detained individuals I have represented over the course of the last several months have ultimately been denied release.

Even in cases where an immigration judge granted a bond order after full evidentiary presentation, adverse DHS action and subsequent appellate intervention have effectively ensured prolonged detention and, in some instances, removal before the Respondent's appeal could be adjudicated.

One such case involved a thirty-three-year-old Brazilian asylum applicant identified here for privacy as "C.S.S." My office was retained to represent his family—C.S.S., his wife, and his minor stepson—in non-detained removal proceedings before the Philadelphia Immigration Court. C.S.S. had no criminal convictions, resided consistently with his wife and minor stepson, complied with every notice and requirement issued by DHS or EOIR, and had presented himself willingly when required. His minor stepson is the beneficiary of federally recognized juvenile protections as a Special Immigrant Juvenile, a classification that will ultimately provide him lawful permanent residency.

The family has lived in the United States for nearly five years, during which they have maintained stable employment, paid taxes, and developed meaningful connections in their community. In late May 2025, C.S.S. was detained and placed in proceedings before the Elizabeth Immigration Court. On July 30, 2025, the presiding immigration judge granted bond in the amount of $12,000. DHS immediately reserved appeal and requested an automatic stay of release during the pendency of the BIA appeal.

On September 2, 2025, the Board of Immigration Appeals issued a briefing schedule for presentation of arguments.On October 31, 2025, the BIA issued a decision vacating bond and denying C.S.S. relief, relying on the Board's decision in *Matter of Yajure-Hurtado*. Notably, *Yajure-Hurtado* was issued and made precedential *after* the immigration judge granted bond, thereby applying new restrictive standards retroactively to an order previously issued under longstanding practice. As of the date of this affidavit, C.S.S. remains detained at the Moshannon Valley Processing Center despite having prevailed before an immigration judge.

I also represented a man from El Salvador, identified as "M.M.G.," who was detained at Moshannon Valley beginning in September 2024**.** His detention stemmed from a false allegation made by an ex-partner amid contentious custody proceedings. The criminal charges were ultimately dismissed in state court.
We sought bond before the immigration court while pursuing Cancellation of Removal on the basis of his four minor U.S. citizen children. One child was born during his detention, whom he held just a few times.

The immigration judge granted bond; DHS appealed and sought a stay pending appeal. While awaiting a BIA briefing schedule in the bond matter, EOIR advanced his final merits hearing from September 11, 2025, to August 15, 2025—less than half the time originally allotted. Counsel immediately sought a continuance due to the extraordinary circumstances, including the pending BIA bond appeal and the need for meaningful preparation. This request was denied almost immediately.

A Cancellation of Removal case—particularly one involving four qualifying U.S. citizen children—requires extensive preparation, including psychological evaluations, affidavits from teachers, specialists, or medical professionals, and detailed country conditions evidence. Such preparation typically spans many months.
M.M.G. was afforded only weeks, and then even fewer, after EOIR's advancement of his

hearing. He was ultimately removed from the United States while his bond appeal before the BIA remained pending.

These experiences are not isolated events; they reflect a pattern now readily apparent to practitioners nationwide. The consistent elevation of procedural barriers, the retroactive application of newly issued precedents, the restrictive interpretation of judicial authority, and the DHS practice of appealing nearly every bond order collectively demonstrate an intentional erosion of Respondents' ability to obtain fair adjudication.

It has become clear to many practitioners that the immigration court—often in concert with DHS and the Department of Justice—has created an environment where procedural hurdles are engineered to move the goalposts continually. Each time a Respondent satisfies the standards purportedly required, new obstacles emerge, standards shift, or orders are rendered ineffective by administrative maneuvering.

This is not due process. It is not fundamental fairness. It is not an accessible system of adjudication. In many cases, it is no process at all. What is occurring reflects the dismantling of meaningful immigration review, and in many circumstances, the dismantling of due process itself.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: December 11, 2025                                          //s// Alexis M. Price, Esq.

                                                                                 Alexis M. Price
                                                                                 NJ Bar: 496882025

AFFIDAVIT OF ERIC M. MARK, ESQ.

I have been practicing criminal defense and immigration for more than 15 years and have represented dozens, or hundreds, of clients during bond proceedings before the Immigration Court.

Presently, I am the attorney representing Pablo Martinez Ron before the Immigration Court and before the U.S. District Court for the District of New Jersey before the Hon. Michael E. Farbiarz on a Petition for Habeas Corpus.

Judge Farbiarz ordered a bond hearing for Mr. Martinez Ron that was conducted by Immigration Judge Counihan of the Batavia Immigration Court. Mr. Martinez Ron has been present in the United States for approximately two years. He has no criminal history. He was initially on the docket in Maryland and appeared there once for a hearing. Subsequently, he changed his address with the court and venue was transferred to New Jersey. He was awaiting a hearing in New Jersey. Substantial documentary evidence was submitted demonstrating that he was engaged to be married and lived with his fiancé and his fiance's mother in a house owned by his fiance's mother. The couple had begun IVF treatments, including blood draws and payments and this was also documented to the court. His fiancé was present at the bond hearing.

Despite this evidence, the immigration judge found Mr. Martinez Ron did not have a meaningful family tie in the United States, and that he <u>might</u> have such a tie if he got married. The immigration judge found he did not have a fixed address in the U.S. because he had previously lived at other addresses, was not on the deed and there was no lease. The judge also held against him, without articulating why, that he made $500 - $700 per week.

In the past, such facts would have resulted in a low bond based on decades of caselaw. Her the immigration judge created an impossible standard. Evidence of stable employment was somehow held against the non-citizen. Living with a fiancé and going through IVF was somehow not sufficient to establish a meaningful tie to the U.S. Merely having prior addresses, something that virtually every person on the face of the Earth has, was held against him even though he updated the court when he moved and appeared in court when scheduled.

It is evident that immigration judges have been instructed not to issue bonds and what rationales to rely on to do so. Judges who have been issuing bonds for years, if they have not been terminated, have suddenly stopped issuing bonds. Facts and evidence that were sufficient evidence in 2024 are completely discarded or held against the non-citizens in

2025. The burden of proof has been elevated to such a level that it is impossible to meet and is far beyond what is constitutionally permissible or statutorily authorized.

I affirm that the foregoing statements are true and correct and that any willfully false statement is punishable under the penalty of perjury.


Dated: Decemeber 11, 2025                    /s/ Eric M. Mark

                                             Eric M. Mark, Esq.

# D'UVA&MIRON

## ATTORNEYS AT LAW

17 Academy Street, Suite 1101
Newark, New Jersey 07102

Raymond P. D'Uva
1976-2020

T: 973 643 7750
E: Alexandra@duvalaw.com

Alexandra Miron
Member NY & NJ Bars

December 30, 2025

**BY ECF**

Hon. Edward S. Kiel, U.S.D.J.
U.S. District Court for the District of New Jersey
4th & Copper Streets
Camden, NJ 08101

> **Re:**   *Ismael Arriaga Miranda v. Pam Bondi, et. al., No. 25-1887*
> **Bond Hearing Update**

Dear Hon. Judge Kiel:

I represent the Petitioner in the above-referenced habeas matter. On December 23, 2025, this Court ordered that the Petitioner be provided a bond hearing by the Immigration Court by December 30, 2025, by 5:00pm.

As per the order, on December 23, 2025, counsel for Petitioner filed a request for bond hearing with the Immigration Court. A hearing was calendared for December 29, 2025, at 9:00am before the Immigration Judge Nicole Lane sitting in Newark, NJ, and appearing for the Elizabeth, NJ Immigration Court.

On December 29, 2025, counsel appeared before Judge Lane to proceed with the scheduled bond hearing. However, Judge Lane indicated that the Immigration Court did not review the evidence and legal memorandum submitted in support of the bond hearing by counsel on December 24th and 26th respectively. Judge Lane further indicated to counsel that the options would be to proceed on the merits of the bond without the Court having reviewed or considered the evidence and memorandum, or withdraw the bond request. When requested by counsel, Judge Lane declined to provide a new hearing date so as to allow the Court to review the evidence; Judge Lane indicated that the bond request must be decided or withdrawn. Effectively, the Petitioner was deprived of his due process right to a bond hearing being conducted on the merits and was forced to withdraw



the bond request. Judge Lane also indicated that even if the Immigration Court could review the evidence later that day, it did not have the space to conduct the hearing later on in the day due to the crowded court calendar. Counsel attaches email confirmations of the submissions filed in support of the bond hearing via the ECAS filing system of EOIR.

Independent of the bond hearing, the Petitioner was also scheduled twice to appear before the Elizabeth Immigration Court in connection with his removal proceedings matter; on both occasions, the hearings were not conducted due to the overwhelmed calendar of the Immigration Court.

There is currently no future hearing scheduled for the Petitioner's removal case. There is also no future bond hearing scheduled for the Petitioner at the request of the Immigration Court or the Respondents'. The Petitioner has now been in ICE/ERO custody since Thanksgiving Day on November 27, 2025.

In light of the Immigration Court's inability to timely review and consider evidence, to conduct the hearings as scheduled, and the lack of an order of removal against him, the Petitioner believes that the appropriate equitable remedy is that this Court grant Petitioner's immediate release from custody, and enjoin the Government from re-detaining the Petitioner under INA 1225, which this Court found inapplicable to him.

Sincerely,

*/s/Alexandra Miron*
Alexandra Miron, Esq.

2

 **Outlook**

## EOIR - ARRIAGA MI - 731 - Service - Supplemental Ev - RMV

**From** eFiling-DHSPortal@usdoj.gov <eFiling-DHSPortal@usdoj.gov>

**Date** Wed 12/24/2025 12:19 PM

**To** Alexandra Miron at D'Uva & Miron Law Office <Alexandra@duvalaw.com>; Alexandra Miron at D'Uva & Miron Law Office <Alexandra@duvalaw.com>

The Executive Office for Immigration Review (EOIR) has received an electronic upload of the document referenced below. EOIR is evaluating this document for inclusion into the electronic Record of Proceedings (eROP). EOIR will notify you upon completion of the evaluation process.

- eFiled Document Name: ARRIAGA Ismael Second Compressed Respondent s Evidence as Listed A to S.pdf
- Document Category: Supplemental Evidence
- Document Sub Category: Evidence Part 01
- Uploaded On: 12/24/2025
- Tracking Number: 000-049-408-494

- A-Number: 221-491-731
- Alien Name: ARRIAGA MIRANDA, ISMAEL
- Bond Requested Date: 12/23/2025
- Case Type: RMV
- Other Information: Detained

The documents associated with this filing may be viewed as follows:

Individuals in immigration proceedings before EOIR may view the documents in the EOIR Respondent Access Portal at this [/link?returnUrl=/casedetails&alien=221491731]link. A valid User ID and password are required for access.

Attorneys/Representatives may view the documents in the EOIR Case Portal at this link. A valid User ID and password are required for access.

DHS users may view the documents in the EOIR DHS Portal at this link.

Case 2:26-cv-00697-GRB Document 1-1 Filed 02/07/26 Page 14 of 43 PageID #: 38

 **Outlook**

## EOIR - ARRIAGA MI - 731 - Service - Filings - RMV

**From** eFiling-DHSPortal@usdoj.gov <eFiling-DHSPortal@usdoj.gov>

**Date** Fri 12/26/2025 11:47 AM

**To** Alexandra Miron at D'Uva & Miron Law Office <Alexandra@duvalaw.com>; Alexandra Miron at D'Uva & Miron Law Office <Alexandra@duvalaw.com>

The Executive Office for Immigration Review (EOIR) has received an electronic upload of the document referenced below. EOIR is evaluating this document for inclusion into the electronic Record of Proceedings (eROP). EOIR will notify you upon completion of the evaluation process.

- eFiled Document Name: Updated Legal memo for bond following habeas Ismael Arriaga.pdf
- Document Category: Filings
- Document Sub Category: Legal Brief
- Uploaded On: 12/26/2025
- Tracking Number: 000-049-416-702

- A-Number: 221-491-731
- Alien Name: ARRIAGA MIRANDA, ISMAEL
- Bond Requested Date: 12/23/2025
- Case Type: RMV
- Other Information: Detained

The documents associated with this filing may be viewed as follows:

Individuals in immigration proceedings before EOIR may view the documents in the EOIR Respondent Access Portal at this [/link?returnUrl=/casedetails&alien=221491731]link. A valid User ID and password are required for access.

Attorneys/Representatives may view the documents in the EOIR Case Portal at this link. A valid User ID and password are required for access.

DHS users may view the documents in the EOIR DHS Portal at this link.

Case 2:26-cv-00697-GRB Document 1-1 Filed 02/07/26 Page 15 of 43 PageID #: 39

 **Outlook**

## EOIR - ARRIAGA MI - 731 - Accepted - Supplemental Ev - RMV

**From** eRop@usdoj.gov <eRop@usdoj.gov>

**Date** Mon 12/29/2025 9:16 AM

**To** Alexandra Miron at D'Uva & Miron Law Office <Alexandra@duvalaw.com>; Alexandra Miron at D'Uva & Miron Law Office <Alexandra@duvalaw.com>

The Executive Office for Immigration Review (EOIR) has reviewed and approved your uploaded document. The following document is now included in the electronic Record of Proceedings (eROP):

- eFiled Document Name: ARRIAGA Ismael Second Compressed Respondent s Evidence as Listed A to S.pdf
- Document Category: Supplemental Evidence
- Document Sub Category: Evidence Part 01
- Uploaded On: 12/24/2025
- Tracking Number: 000-049-408-494

- A-Number: 221-491-731
- Alien Name: ARRIAGA MIRANDA, ISMAEL
- Bond Requested Date: 12/23/2025
- Case Type: RMV

- Other Information: Detained

Individuals in immigration proceedings before EOIR may view the documents in the EOIR Respondent Access Portal at this [/link?returnUrl=/casedetails&alien=221491731]link. A valid User ID and password are required for access.

Attorneys/Representatives may view the documents in the EOIR Case Portal at this link. A valid User ID and password are required for access.

DHS users may view the documents in the EOIR DHS Portal at this link.

Case 2:26-cv-00697-GRB    Document 1-1    Filed 02/07/26    Page 16 of 43 PageID #: 40

 **Outlook**

---

## EOIR - ARRIAGA MI - 731 - Accepted - Filings - RMV

---

**From** eRop@usdoj.gov <eRop@usdoj.gov>

**Date** Mon 12/29/2025 9:16 AM

**To** Alexandra Miron at D'Uva & Miron Law Office <Alexandra@duvalaw.com>; Alexandra Miron at D'Uva & Miron Law Office <Alexandra@duvalaw.com>

The Executive Office for Immigration Review (EOIR) has reviewed and approved your uploaded document. The following document is now included in the electronic Record of Proceedings (eROP):

- eFiled Document Name: Updated Legal memo for bond following habeas Ismael Arriaga.pdf
- Document Category: Filings
- Document Sub Category: Legal Brief
- Uploaded On: 12/26/2025
- Tracking Number: 000-049-416-702

- A-Number: 221-491-731
- Alien Name: ARRIAGA MIRANDA, ISMAEL
- Bond Requested Date: 12/23/2025
- Case Type: RMV

- Other Information: Detained

Individuals in immigration proceedings before EOIR may view the documents in the EOIR Respondent Access Portal at this [/link?returnUrl=/casedetails&alien=221491731]link. A valid User ID and password are required for access.

Attorneys/Representatives may view the documents in the EOIR Case Portal at this link. A valid User ID and password are required for access.

DHS users may view the documents in the EOIR DHS Portal at this link.



**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**ELIZABETH IMMIGRATION COURT**

Respondent Name:

    ARRIAGA MIRANDA, ISMAEL

To:

    Miron, Alexandra
    17 Academy Street
    Suite 1101
    Newark, NJ 07102

A-Number:
221-491-731
Riders:
In Custody Redetermination Proceedings

Date:
12/29/2025

**ORDER OF THE IMMIGRATION JUDGE**

The respondent requested a custody redetermination pursuant to 8 C.F.R. § 1236. After full consideration of the evidence presented, the respondent's request for a change in custody status is hereby ordered:

☐    Denied, because

☐    Granted. It is ordered that Respondent be:
    ☐    released from custody on his own recognizance.
    ☐    released from custody under bond of $
    ☐    other:

☑    Other:
    WITHDRAWN.

Immigration Judge: Nicole Lane 12/29/2025

Appeal:    Department of Homeland Security: ☑ waived    ☐ reserved

Respondent:                                    ☑ waived    ☐ reserved

Appeal Due:


**Certificate of Service**

This document was served:

Via: [ M ] Mail | [ P ] Personal Service | [ E ] Electronic Service | [ U ] Address Unavailable

To: [ ] Alien | [ ] Alien c/o custodial officer | [ E ] Alien atty/rep. | [ E ] DHS

Respondent Name : ARRIAGA MIRANDA, ISMAEL | A-Number : 221-491-731

Riders:

Date: 12/29/2025 By: DUARTE, ORDALINA, Court Staff

# ATTORNEY CERTIFICATAION

Lawrence K. Le Roy, Attorney at Law, does hereby state:

1 I have been practicing law since January 1981and am admitted to the bar in the states of New Jersey and New York. My office is located at 228 Mt. Prospect Avenue, Newark, N 07104 since September 1983.

2, I practice exclusively immigration and nationality law. Previously I was an officer with the legacy Immigration and Naturalization Service from 1974 through 1981. More than 50% of my cases involve matters pending in Immigration Court. I have represented countless respondents over the years in both deportation and custody matters.

3. On December 29, 2025 I appeared before Immigration Judge Nicole Lane in a custody redetermination hearing for a detained respondent. No issues of jurisdictional authority over bond eligibility was raised in any fashion.

4. I am well aware of the requirements of INA Section 236 regarding danger to national security, danger to public safety and flight risk as the main elements of concern for seeking and being granted release from custody by posting a monetary bond.

5. Applying the facts in my client's case to the legal requirements for bond, I believed that he had a reasonably strong case. He has been present in the United States for 18 years, he has a 12 year old US citizen child, he presented evidence of gainful employment, tax returns and a fixed address. He did have an arrest for a disorderly persons offense three years ago in municipal court that was dismissed.

6. Judge Lane interpreted his long residence in the United States as his "evading the immigration authorities for 18 years." I argued against this interpretation as his arrest by ICE was merely collateral to a targeted enforcement action for another individual.

7. In my four decades of appearing in bond proceedings I have always seen long residence in the US as a positive factor in seeking bond. To have my client's almost two decades in the US dismissed as evasive in nature is counter intuitive.

8. Additionally presenting confirmation of employment has always been viewed as positive. In this case Judge Lane commented that he was only with this employer for two years not factoring in the he merely changed employers as many people do.

9. Judge Lane dismissed his lease contract as a residential tie because his landlord is also his employer. This has never been considered a negative factor as to flight risk.

10. Judge Lane placed little or no weight on his relation to his US citizen daughter against flight risk because he did not have "more family". In my experience US citizen children have always weighed heavily in favor of bond.

11. Judge Lane gave little weight to his tax returns because "he did not have other years". My experience has always been that the filing of any tax returns is a positive consideration as to flight risk.

12. Lastly, the judge believed that the respondent's disorderly persons arrest, although dismissed, still indicates that the respondent is a danger to public safety. A dismissed charge is always been a positive factor when addressing danger to the community. The BIA recently reversed a finding by the immigration judge in another case of mine when bond was denied as to danger to the community based upon a dismissed disorderly persons offense.

13. My take away from this hearing is there is a hidden agenda or "marching orders" of sorts that are driving immigration judges to deny bonds in otherwise meritorious cases. Of course, I cannot prove this but my suspicions are reasonable.

14. It flows from the absurdity of having Immigration Judges not acting independently but rather as employees of the highest-ranking law enforcement official in the United States; the Attorney General of the U.S. who is pursing the goals of the present administration. They fear arbitrary dismissal which is happening in real time.

Lawrence K. Le Roy
Attorney at Law
12/30/2025

# ATTORNEY CERTIFICATAION

Lawrence K. Le Roy, Attorney at Law, does hereby state:

1 I have been practicing law since January 1981and am admitted to the bar in the states of New Jersey and New York. My office is located at 228 Mt. Prospect Avenue, Newark, N 07104 since September 1983.

2, I practice exclusively immigration and nationality law. Previously I was an officer with the legacy Immigration and Naturalization Service from 1974 through 1981. More than 50% of my cases involve matters pending in Immigration Court. I have represented countless respondents over the years in both deportation and custody matters.

3. On December 29, 2025 I appeared before Immigration Judge Nicole Lane in a custody redetermination hearing for a detained respondent. No issues of jurisdictional authority over bond eligibility was raised in any fashion.

4. I am well aware of the requirements of INA Section 236 regarding danger to national security, danger to public safety and flight risk as the main elements of concern for seeking and being granted release from custody by posting a monetary bond.

5. Applying the facts in my client's case to the legal requirements for bond, I believed that he had a reasonably strong case. He has been present in the United States for 18 years, he has a 12 year old US citizen child, he presented evidence of gainful employment, tax returns and a fixed address. He did have an arrest for a disorderly persons offense three years ago in municipal court that was dismissed.

6. Judge Lane interpreted his long residence in the United States as his "evading the immigration authorities for 18 years." I argued against this interpretation as his arrest by ICE was merely collateral to a targeted enforcement action for another individual.

7. In my four decades of appearing in bond proceedings I have always seen long residence in the US as a positive factor in seeking bond. To have my client's almost two decades in the US dismissed as evasive in nature is counter intuitive.

8. Additionally presenting confirmation of employment has always been viewed as positive. In this case Judge Lane commented that he was only with this employer for two years not factoring in the he merely changed employers as many people do.

9. Judge Lane dismissed his lease contract as a residential tie because his landlord is also his employer. This has never been considered a negative factor as to flight risk.

10. Judge Lane placed little or no weight on his relation to his US citizen daughter against flight risk because he did not have "more family". In my experience US citizen children have always weighed heavily in favor of bond.

11. Judge Lane gave little weight to his tax returns because "he did not have other years".  My experience has always been that the filing of any tax returns is a positive consideration as to flight risk.

12. Lastly, the judge believed that the respondent's disorderly persons arrest, although dismissed, still indicates that the respondent is a danger to public safety. A dismissed charge is always been a positive factor when addressing danger to the community. The BIA recently reversed a finding by the immigration judge in another case of mine when bond was denied as to danger to the community based upon a dismissed disorderly persons offense.

13. My take away from this hearing is there is a hidden agenda or "marching orders" of sorts that are driving immigration judges to deny bonds in otherwise meritorious cases. Of course, I cannot prove this but my suspicions are reasonable.

14. It flows from the absurdity of having Immigration Judges not acting independently but rather as employees of the highest-ranking law enforcement official in the United States; the Attorney General of the U.S. who is pursing the goals of the present administration. They fear arbitrary dismissal which is happening in real time.

Lawrence K. Le Roy
Attorney at Law
12/30/2025



**Matthew J. Archambeault, Esq.**
Direct: 215-599-2189
Fax: 215-790-6242
mja@archambeaultlaw.com

December 12, 2025

**<u>AFFIDAVIT OF MATTHEW J. ARCHAMBEAULT</u>**

I swear, under the penalty of perjury, the following is true and correct. I have been a practicing immigration attorney for over 23 years. I practice primarily in removal defense, including the representation of detained individuals. I have appeared in immigration courts in Pennsylvania, New Jersey, New York, Maryland, Florida, Georgia, North Carolina, Texas, Louisiana, Colorado, California, Washington, Puerto Rico, St. Thomas, and St. Lucia over my career. I have also represented immigrants in federal court at both the District and Circuit levels.

I write this affidavit for general use for my colleagues for submission in any court proceedings they feel appropriate.

I have represented hundreds of clients over the years and done scores of bond redetermination hearings. Under the current administration, bond redeterminations have undergone a noticeable shift, most notably in the issuance of the BIA precedent decision *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025) . This decision illegally concluded that a vast swath of immigrants, who entered without inspection, were subjected to mandatory detention pursuant to INA 235(b)(2), and not eligible for bond. Decades of practice and legal precedent found the same individuals eligible for bond and detained under INA 236(a). Hundreds of federal district courts have ruled against the administration following a flood of habeas corpus petitions nationwide. The result of this litigation has been that immigrants are either released or afforded an opportunity to have a bond hearing before an immigration judge.

I represent Jorge Perez Florez in both immigration court and the New Jersey District Court (case no. 2-25-cv-17865-SDW). Mr. Perez Florez was detained by ICE on November 24, 2025, and transported to the Elizabeth Detention Center in Elizabeth, New Jersey. I filed a habeas corpus petition on his behalf on the same day, and the Honorable Susan D. Wigenton of the New Jersey District Court issued a text order directing that a bond hearing be held by December 1, 2025. Immigration Judge Ramin Rastegar conducted a bond hearing on December 1, 2025, at the Elizabeth Immigration Court in Elizabeth, New Jersey.

Mr. Jorge Perez Florez is a Mexican immigrant who has been in the United States for more than 18 years, lives with his long-term partner and their 15-year-old U.S. citizen daughter in Maple Shade, New Jersey. Mr. Perez Florez has resided at the Maple Shade, New Jersey, address for more than 8 years and in the immediate area for the entirety of his time in the United States. Mr. Perez Florez has never been arrested in the United States or anywhere else in the world. Mr. Perez Florez is eligible to apply for Cancellation of Removal for Certain Non-

216 Haddon Avenue, Suite 402, Haddon Township, NJ 08108
www.archambeaultlaw.com

Permanent Residents, as he has been in the United States for more than ten years, has a US citizen child who would suffer extreme and unusual hardship if he were removed, and has been a person of good moral character and worthy of discretion. Mr. Perez Florez's US citizen daughter had been recently hospitalized for anxiety disorder and was beginning treatment. Mr. Perez Florez had numerous persons write on his behalf, and a US citizen sponsor was prepared to post any bond issued by the immigration judge.

The Department of Homeland Security raised the following negative factor: Mr. Perez Florez had previously attempted to enter the United States more than 18 years ago, was voluntarily returned, and then re-entered undetected. DHS also concluded that Mr. Perez had received a traffic ticket in 2009, when it appears he did not have a license, as an indicator of dangerousness. DHS further questioned a "learner's permit" from Maryland obtained by Mr. Perez Florez, despite his never appearing to live in Maryland.

These sets of facts would traditionally have earned Mr. Perez Florez a bond, as his lack of criminal history indicates he is not a danger to the community, and his long-term, stable residency in the United States with a family, relief from removal available, and support from the community would indicate he is not a flight risk. In my professional experience, one would expect a bond ranging from $2,500 to $10,000. This was not the case this time.

Immigration Judge Rastegar ruled that he posed a danger to the community and a flight risk so significant that no amount of bond would ensure his appearance for deportation if he lost his case. Immigration Judge Rastegar refused to explain why Mr. Perez Florez was a flight risk, indicating we could read it in his bond memorandum if we appealed. He did explain that Mr. Perez Florez's long-term residency here was a negative factor, as he never attempted to "fix" his immigration status, despite the fact that no options for doing so existed. After extensive questioning, Judge Rastegar concluded that Mr. Perez Florez was not credible based on his receiving a "driver's license" from Maryland, even though it was apparent he never lived there, and questions regarding an educational program Mr. Perez Florez completed in Camden, NJ. Judge Rastegar also held the fact that no applciation for relief had not been submitted to the immigraiton court, despite the fact that he had yet to appear for his first initial master calendar hearing (bond proceedings are separate and distinct from removal proceedings), which was scheduled for December 8, 2025 and pleadings on the allegations alleged by the Department of Homeland Security had not been completed. Judge Rastegar refused to recognize Mr. Perez Florez's long-term, committed relationship with the mother of their child because they were not married. Lastly, Judge Rastegar concluded that, because there was scant documentation of the medical condition affecting his 15-year-old USC daughter, he could not meet his burden to approve any Cancellation of Removal Application submitted, and that no amount of bond would be sufficient to ensure Mr. Perez Florez would appear for his ordered removal. Judge Rastegar did not even consider other restrictions on Mr. Perez Florez's liberty that could have ensured his compliance, such as electronic monitoring and/or reporting to ICE.

In my 23-year professional career, I have never had a bond flatly denied under similar facts. It is clear that I am not alone. The New Jersey AILA listserve is replete with similar, and even more egregious examples of bond denials from the judges at the Elizabeth Immigration Court and other courts across the country. I observed a bond hearing for an immigrant who has been in the United States for over 20 years, several US citizen children, one with a serious heart

condition, and no criminal record, denied a bond by Immigration Judge Wilson, finding he was a flight risk because he resided so long in the United States without being detected and that no amount of bond would be sufficient to ensure he complied with a deportation order. Now immigration judges are using immigrants' long-term residency and deep ties to the community as evidence of their flight risk. This is not normal.

Despite the losses of over 200 federal district court cases on the issue of detention pursuant to INA 235(b)(2), DHS persists in illegally denying immigrants their statutory right to a bond hearing, causing the current flood of litigation that is taking the time of US Attorneys who could be working on essential cases affecting our security as a nation, and time away from District Court judges and their staff. DHS has no incentive to change its practice if the result is immigrants spending thousands of dollars for legal representation and a rigged bond hearing, designed only to deny deserving immigrants the ability to receive a bond and return to their families and community as Congress intended.

We implore District Court judges to address this issue by either ordering the straight release from detention when it is shown that the detention is illegal, or conducting their own bond analysis and making their own determination regarding the issuance of bond, the amount, and any other restrictions the Court deems necessary.

We sincerely appreciate the Court's attention to this matter.


Respectfully,
/s/Matthew J. Archambeault
Matthew J. Archambeault
Law Office of Matthew J. Archambeault
216 Haddon Avenue, Suite 402
Haddon Township, NJ 08108
215-599-2189
mja@archambeaultlaw.com

**AFFIDAVIT OF ADRIANA MITCHELL, ESQ.**

I am the attorney representing Mr. Delgado-Villegas in Immigration Court.

On December 4, 2025, the Honorable District Court Judge Paul S. Diamond granted Mr. Delgado-Villegas's *habeas corpus* petition and ordered that a bond hearing on his case be held no later than December 11, 2025.

On December 10, 2025, at or around 9:00 a.m., I appeared in Immigration Court in Newark, New Jersey, by video for a bond reconsideration hearing. The bond hearing was conducted by the Immigration Judge Tamar Wilson.

At the beginning of the hearing, I argued that Mr. Delgado-Villegas, who has been present in the United States for more than twenty-five years, has no criminal history, is gainfully employed, and is the father of three U.S.-citizen children, is neither a risk of flight nor a danger to the community, and that he should be released on bond. I stated that my client has strong incentives to participate in his future court hearings because he is *prima facie* eligible for immigration relief in the form of Cancellation of Removal for Non-Lawful Permanent Residents.

In response, the U.S. Immigration and Customs Enforcement ("ICE") attorney, Keith Hoppes, argued that, even though he did not believe Mr. Delgado-Villegas is currently a risk of flight, he had concerns that Mr. Delgado-Villegas might become a risk of flight in the event he was to lose his immigration case.

The Immigration Judge orally denied bond, finding that Mr. Delgado-Villegas is a risk of flight because, as she stated, "he resided in the United States for more than twenty-five years undetected" without applying for any immigration relief.

I pointed out that Mr. Delgado-Villegas was not eligible for any relief, and that he became eligible for Cancellation of Removal only after being placed in removal proceedings.

The Immigration Judge then went on to justify her finding of risk of flight by expressing skepticism regarding Mr. Delgado-Villegas's chances of prevailing on his application for Cancellation of Removal. She also stated that Mr. Delgado-Villegas had lived at his current address "for only three years" and had not filed tax returns. She suggested that he either lied about or underreported his income because, in her opinion, the amount he was making was not enough to support his family.

Ultimately, the Immigration Judge found that Respondent presents a risk of flight and denied bond. I reserved appeal, and the Immigration Judge stated that the appeal is due on January 9, 2026.

The judge failed to consider any alternative to detention to mitigate what she perceived as a flight risk, even though my client has a bond sponsor, a clean record, solid ties to the United States and incentives to appear in court and fight his case. Based on information and believes, Mr. Delgado-Villegas' case is not isolated, but part of a pattern of conduct.

## VERIFICATION

I, Adriana Mitchell, Esq., hereby verify that the statements contained therein are true and correct to the best of my knowledge, information, and belief, based upon my personal recollection and the notes I prepared immediately following Mr. Gabriel Delgado-Villegas's bond reconsideration hearing on December 10, 2025.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 10th day of December 2025, in Philadelphia, Pennsylvania

Adriana Mitchell
PA Bar Number 323243

**<u>Affidavit of Alexis M. Price</u>**

My name is Alexis M. Price. I am a practicing immigration attorney licensed before the New Jersey Bar (Bar No. 496882025). My practice includes extensive work in detained and non-detained dockets across multiple jurisdictions, including the Elizabeth Immigration Court, the Philadelphia Immigration Court, and related detention facilities.

For attorneys who regularly practice before EOIR—particularly within detained dockets—it has become increasingly clear that the Immigration Court has taken a severe departure from longstanding practice and interpretation of the Immigration and Nationality Act (INA) and controlling BIA precedent. Throughout recent months, practitioners have observed rapidly shifting regulatory standards, inconsistent adjudications, opaque procedural policies, and a systemic restriction of access to bond and other procedural protections. In my experience, these trends have become markedly pronounced over the last several months, with direct and significant impact on Respondents' ability to obtain fair and meaningful review.

I have represented numerous detained individuals in proceedings before the Immigration Court, including individuals with strong equities, fixed residences, no criminal history, and demonstrated compliance with all immigration obligations. Despite these facts, nearly all of the detained individuals I have represented over the course of the last several months have ultimately been denied release.

Even in cases where an immigration judge granted a bond order after full evidentiary presentation, adverse DHS action and subsequent appellate intervention have effectively ensured prolonged detention and, in some instances, removal before the Respondent's appeal could be adjudicated.

One such case involved a thirty-three-year-old Brazilian asylum applicant identified here for privacy as "C.S.S." My office was retained to represent his family—C.S.S., his wife, and his minor stepson—in non-detained removal proceedings before the Philadelphia Immigration Court. C.S.S. had no criminal convictions, resided consistently with his wife and minor stepson, complied with every notice and requirement issued by DHS or EOIR, and had presented himself willingly when required. His minor stepson is the beneficiary of federally recognized juvenile protections as a Special Immigrant Juvenile, a classification that will ultimately provide him lawful permanent residency.

The family has lived in the United States for nearly five years, during which they have maintained stable employment, paid taxes, and developed meaningful connections in their community. In late May 2025, C.S.S. was detained and placed in proceedings before the Elizabeth Immigration Court. On July 30, 2025, the presiding immigration judge granted bond in the amount of $12,000. DHS immediately reserved appeal and requested an automatic stay of release during the pendency of the BIA appeal.

On September 2, 2025, the Board of Immigration Appeals issued a briefing schedule for presentation of arguments.On October 31, 2025, the BIA issued a decision vacating bond and denying C.S.S. relief, relying on the Board's decision in *Matter of Yajure-Hurtado*. Notably, *Yajure-Hurtado* was issued and made precedential *after* the immigration judge granted bond, thereby applying new restrictive standards retroactively to an order previously issued under longstanding practice. As of the date of this affidavit, C.S.S. remains detained at the Moshannon Valley Processing Center despite having prevailed before an immigration judge.

I also represented a man from El Salvador, identified as "M.M.G.," who was detained at Moshannon Valley beginning in September 2024**.** His detention stemmed from a false allegation made by an ex-partner amid contentious custody proceedings. The criminal charges were ultimately dismissed in state court.
We sought bond before the immigration court while pursuing Cancellation of Removal on the basis of his four minor U.S. citizen children. One child was born during his detention, whom he held just a few times.

The immigration judge granted bond; DHS appealed and sought a stay pending appeal. While awaiting a BIA briefing schedule in the bond matter, EOIR advanced his final merits hearing from September 11, 2025, to August 15, 2025—less than half the time originally allotted. Counsel immediately sought a continuance due to the extraordinary circumstances, including the pending BIA bond appeal and the need for meaningful preparation. This request was denied almost immediately.

A Cancellation of Removal case—particularly one involving four qualifying U.S. citizen children—requires extensive preparation, including psychological evaluations, affidavits from teachers, specialists, or medical professionals, and detailed country conditions evidence. Such preparation typically spans many months.
M.M.G. was afforded only weeks, and then even fewer, after EOIR's advancement of his

hearing. He was ultimately removed from the United States while his bond appeal before the BIA remained pending.

These experiences are not isolated events; they reflect a pattern now readily apparent to practitioners nationwide. The consistent elevation of procedural barriers, the retroactive application of newly issued precedents, the restrictive interpretation of judicial authority, and the DHS practice of appealing nearly every bond order collectively demonstrate an intentional erosion of Respondents' ability to obtain fair adjudication.

It has become clear to many practitioners that the immigration court—often in concert with DHS and the Department of Justice—has created an environment where procedural hurdles are engineered to move the goalposts continually. Each time a Respondent satisfies the standards purportedly required, new obstacles emerge, standards shift, or orders are rendered ineffective by administrative maneuvering.

This is not due process. It is not fundamental fairness. It is not an accessible system of adjudication. In many cases, it is no process at all. What is occurring reflects the dismantling of meaningful immigration review, and in many circumstances, the dismantling of due process itself.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.


Dated: December 11, 2025                           //s// Alexis M. Price, Esq.

                                                   Alexis M. Price
                                                   NJ Bar: 496882025

AFFIDAVIT OF ERIC M. MARK, ESQ.

I have been practicing criminal defense and immigration for more than 15 years and have represented dozens, or hundreds, of clients during bond proceedings before the Immigration Court.

Presently, I am the attorney representing Pablo Martinez Ron before the Immigration Court and before the U.S. District Court for the District of New Jersey before the Hon. Michael E. Farbiarz on a Petition for Habeas Corpus.

Judge Farbiarz ordered a bond hearing for Mr. Martinez Ron that was conducted by Immigration Judge Counihan of the Batavia Immigration Court. Mr. Martinez Ron has been present in the United States for approximately two years. He has no criminal history. He was initially on the docket in Maryland and appeared there once for a hearing. Subsequently, he changed his address with the court and venue was transferred to New Jersey. He was awaiting a hearing in New Jersey. Substantial documentary evidence was submitted demonstrating that he was engaged to be married and lived with his fiancé and his fiance's mother in a house owned by his fiance's mother. The couple had begun IVF treatments, including blood draws and payments and this was also documented to the court. His fiancé was present at the bond hearing.

Despite this evidence, the immigration judge found Mr. Martinez Ron did not have a meaningful family tie in the United States, and that he <u>might</u> have such a tie if he got married. The immigration judge found he did not have a fixed address in the U.S. because he had previously lived at other addresses, was not on the deed and there was no lease. The judge also held against him, without articulating why, that he made $500 - $700 per week.

In the past, such facts would have resulted in a low bond based on decades of caselaw. Her the immigration judge created an impossible standard. Evidence of stable employment was somehow held against the non-citizen. Living with a fiancé and going through IVF was somehow not sufficient to establish a meaningful tie to the U.S. Merely having prior addresses, something that virtually every person on the face of the Earth has, was held against him even though he updated the court when he moved and appeared in court when scheduled.

It is evident that immigration judges have been instructed not to issue bonds and what rationales to rely on to do so. Judges who have been issuing bonds for years, if they have not been terminated, have suddenly stopped issuing bonds. Facts and evidence that were sufficient evidence in 2024 are completely discarded or held against the non-citizens in

2025. The burden of proof has been elevated to such a level that it is impossible to meet and is far beyond what is constitutionally permissible or statutorily authorized.

I affirm that the foregoing statements are true and correct and that any willfully false statement is punishable under the penalty of perjury.

Dated: Decemeber 11, 2025                    /s/ Eric M. Mark

                                             Eric M. Mark, Esq.



LAW OFFICES OF NOEMI C. SIMBRON
56 HAMILTON STREET, STE. 2
PATERSON, NEW JERSEY 07505

TEL: (973) 684-4214
FAX: (201) 625-6365
NOEMI.SIMBRON@GMAIL.COM

### AFFIDAVIT OF NOEMI C. SIMBRON IN HER CAPACITY AS AN IMMIGRATION ATTORNEY

I have been a member of the New Jersey Bar of Attorneys and of the New Jersey Federal District Court since 2016. I have been a solo practitioner concentrating mainly in representing immigrants before the USCIS and in Removal Proceedings in immigration Court. Before I was admitted to the Bar, I worked as a legal assistant for respected counsels also from our district for 8 years. Accordingly, I have personally handled and participated in documenting hundreds of cases before immigration courts all over the country.

I am writing this statement in good faith to provide the Federal Court with my testimony of the obvious change in impossible standards that immigration judges are currently applying to individuals who are seeking release under bond. Over the course of my career, I have witnessed individuals being provided with a fair opportunity to be released under bond when they are able to show that there is neither a danger to the community nor a flight risk. Whenever an adjudicator immigration judge found that an individual had less than ideal ties to the community, he or she would even grant a larger amount so as to secure their continued appearances at future hearings. This practice seems to have been eradicated since July of 2025.

There seems to be internal instructions to judges to find ways to deny release under bond which were never there before. For instance, I recently represented a 42-year-old Mexican lady, Ms. Eva Alvarez Coeto, before the immigration court (A221-491-571) and this honorable tribunal (2:25-cv-17789-B). Ms. Alvarez entered the United States without inspection in the year 2002. Over the course of her 22-year life span in the U.S., she bore four U.S.C. children (ages 21, 18, 13 and 12)– all of whom resided with her up until the time she was detained. The two youngest children have learning and speech disabilities. Also, she heavily cooperated with the Passaic Police Department in prosecuting the father of her younger children when he showed pornographic videos to her oldest daughter. This participation led to the criminal conviction of this individual, thereby making Ms. Alvarez Coeto also eligible to apply for U visa status. In August of 2025, Ms. Alvarez moved into the father of her older children's father's home following a reduction of her hours at work. The father of her children attempted to kiss Ms. Alvarez against her will and she slapped him once due to unwanted advances before leaving his house. This incident was reported to the police by the father of Ms. Alvarez's children and she was charged with simple assault in the city of Clifton, NJ on or about August 27, 2025. Ms. Alvarez was arrested pursuant to that incident for the first and only time after being present in

the United States for 22 years. She was then referred to immigration detention and is currently being held at the Delaney Hall Detention Center.

On November 20, 2025, this counsel was retained to represent Ms. Alvarez Coeto for a Petition for Habeas Corpus. In preparation for the petition for Habeas Corpus, this counsel requested a bond hearing before the Immigration Court. The immigration Court scheduled a bond redetermination hearing on December 9, 2025. This counsel provided the Court with the children's birth certificates, their medical records showing that the youngest 2 suffer from learning disabilities, evidence of Ms. Alvarez Coeto's work history in the 22 years she has lived here, and a statement from Ms. Alvarez Coeto describing the underlying circumstances leading to the arrest as well as the consequences of her detention, including the fact that custody of the youngest children is being handled by the State's Children's Services because their father is prohibited from approaching them due to the existence of his record as a sexual predator. After hearing legal arguments, Immigration Judge Shana Chen found that she lacked jurisdiction pursuant to <u>Yajure-Hurtado</u>, 29 I&N 216 (BIA 2025) and <u>Maldonado Bautista</u> "not controlling on [that] Court." In the alternative, Judge Chen found that the Respondent "only acknowledged what she could not hide [from the arrest]," and that she was a danger to the community based upon this sole isolated incident in 22 years of history of hard work and raising American children. She also found that Ms. Alvarez Coeto was a flight risk despite her undeniable ties to the community due to the existence of minor children, and her eligibility to obtain status through the U visa statute for indirect victims of crimes as well as through Cancellation of Removal for Nonimmigrants.

In the past, such mild criminal offense would have never been the basis to find an individual such as Ms. Alvarez to be a danger to the community– especially in light of the obvious isolated nature of this offense. Most importantly, the extent of ties that Ms. Alvarez has to this community in her children and the heightened responsibilities of addressing their disabilities *on her own* because the father is under a permanent restraining order and is required to be registered as a sexual predator pursuant to Meghan's Laws is undeniable. In the past, a reasonable finder of fact would have considered that this woman would have a great incentive to pursue relief because her circumstances squarely fit eligibility for U visa status and Cancellations of Removal. Even the most conservative of judges in the country would have at least considered release under higher bond to assure the Respondent's future appearances and to discourage any further potential criminal actions. But this is not the case now. As I waited for my case to be called, I have heard other hearings handled by colleagues who are also being denied release due to absurd reasons which would have never led to denials in the past. This sort of stories about denials are also being shared by numerous of my colleagues within our listserve in the American Immigration Attorneys Association (AILA).

This internal change in the standards for release under bond has to be merely a plot to have immigrants be denied their due process rights because they know individuals who are hard-working and that do not engage in criminal conduct will not be able to withstand being in detention for extended periods of time. They also know that cutting those individuals' access to earn a living will cripple their ability to be represented by counsel causing a flood of them to give up their rights and just ask to voluntarily depart or be deported. And what happens with our

judicial system? Our constitutional rights? Our communities? As this Court is aware, access to bond has been cut by recently published case law to several categories of immigrants who would've been able to be released and to have a real opportunity to exercise their due process rights. For instance, under Qu Li, 29 I&N Dec. 66 (BIA 2025), there are no more bonds for individuals who are deemed "applicants for admissions," that if they had a stop and/or were processed near the border or a port of entry. Under Matter of M-S-, 27 I&N Dec. 509 (A.G. 2019), there is no more access to bond for individuals who were placed in expedited removal, or subjected to administrative deportation, even after they obtain a favorable result of a filter mechanism to be able to see a judge called a credible fear interview. Now, under Yajure-Hurtado, the government sought to  subject every immigrant who may have entered without status at any time to mandatory detention. It is solely because of the intervention of the Federal Courts that this smaller group of individuals– those who are present unlawfully but are not deemed applicants for admission because they were arrested within the territory and are here for a lengthy period of time after their initial entry– have now access to bond when a Petition for Habeas is granted. But, what good does it do if the cases fall back into the same pattern through (presumably) unpublished instructions being received by the immigration judges who are still being mandated to find alternate ways to deny our clients of their due process rights?

Through this letter, I unite my plea to my colleagues to please order our clients released after conducting a fair analysis through this tribunal as we had in the immigration court before the current impossible standards for release were internally mandated. Thank you in advance for your attention.

Respectfully,


/s/ Noemi C. Simbron
Noemi C. Simbron, Esq

# ATTORNEY CERTIFICATAION

Lawrence K. Le Roy, Attorney at Law, does hereby state:

1 I have been practicing law since January 1981and am admitted to the bar in the states of New Jersey and New York. My office is located at 228 Mt. Prospect Avenue, Newark, N 07104 since September 1983.

2, I practice exclusively immigration and nationality law. Previously I was an officer with the legacy Immigration and Naturalization Service from 1974 through 1981. More than 50% of my cases involve matters pending in Immigration Court. I have represented countless respondents over the years in both deportation and custody matters.

3. On December 29, 2025 I appeared before Immigration Judge Nicole Lane in a custody redetermination hearing for a detained respondent. No issues of jurisdictional authority over bond eligibility was raised in any fashion.

4. I am well aware of the requirements of INA Section 236 regarding danger to national security, danger to public safety and flight risk as the main elements of concern for seeking and being granted release from custody by posting a monetary bond.

5. Applying the facts in my client's case to the legal requirements for bond, I believed that he had a reasonably strong case. He has been present in the United States for 18 years, he has a 12 year old US citizen child, he presented evidence of gainful employment, tax returns and a fixed address.  He did have an arrest for a disorderly persons offense three years ago in municipal court that was dismissed.

6. Judge Lane interpreted his long residence in the United States as his "evading the immigration authorities for 18 years." I argued against this interpretation as his arrest by ICE was merely collateral to a targeted enforcement action for another individual.

7. In my four decades of appearing in bond proceedings I have always seen long residence in the US as a positive factor in seeking bond. To have my client's almost two decades in the US dismissed as evasive in nature is counter intuitive.

8. Additionally presenting confirmation of employment has always been viewed as positive. In this case Judge Lane commented that he was only with this employer for two years not factoring in the he merely changed employers as many people do.

9. Judge Lane dismissed his lease contract as a residential tie because his landlord is also his employer. This has never been considered a negative factor as to flight risk.

10. Judge Lane placed little or no weight on his relation to his US citizen daughter against flight risk because he did not have "more family". In my experience US citizen children have always weighed heavily in favor of bond.

11. Judge Lane gave little weight to his tax returns because "he did not have other years". My experience has always been that the filing of any tax returns is a positive consideration as to flight risk.

12. Lastly, the judge believed that the respondent's disorderly persons arrest, although dismissed, still indicates that the respondent is a danger to public safety. A dismissed charge is always been a positive factor when addressing danger to the community. The BIA recently reversed a finding by the immigration judge in another case of mine when bond was denied as to danger to the community based upon a dismissed disorderly persons offense.

13. My take away from this hearing is there is a hidden agenda or "marching orders" of sorts that are driving immigration judges to deny bonds in otherwise meritorious cases. Of course, I cannot prove this but my suspicions are reasonable.

14. It flows from the absurdity of having Immigration Judges not acting independently but rather as employees of the highest-ranking law enforcement official in the United States; the Attorney General of the U.S. who is pursing the goals of the present administration. They fear arbitrary dismissal which is happening in real time.

Lawrence K. Le Roy
Attorney at Law
12/30/2025

**AFFIDAVIT OF KAREN L. HOFFMANN, ESQ.**

I declare under penalty of perjury that the following is true and correct.

1. I have been a practicing attorney since 2017. I am a member in good standing of the bars of Pennsylvania and New Jersey, and am admitted to the U.S. Court of Appeals for the Third Circuit as well as the U.S. District Courts for the Eastern, Middle, and Western Districts of Pennsylvania and the District of New Jersey.

2. As an immigration attorney, I have represented numerous individuals in bond hearings before the Executive Office of Immigration Review ("EOIR" or "Immigration Court").

3. In a recent case in which I filed a petition for writ of habeas corpus for a detained client, *Santana da Cruz v. O'Neill et al.*, No. 25-cv-6286, in the Eastern District of Pennsylvania, Senior U.S. District Judge Joel Slomsky ordered the government to provide a bond hearing for my client.

4. On January 7, 2026, Immigration Judge Dennis Ryan of the Elizabeth Immigration Court held a bond hearing in which evidence was presented that:

   a. My client has a fixed address where he lives with his wife and two children, and that he is their principal support, both emotionally and financially.
   b. His employer, a U.S. Lawful Permanent Resident, attesting that he would ensure my client complied with his immigration requirements.
   c. He has been in the United States for more than three years.
   d. He and his family have a pending asylum claim, which they filed affirmatively with the Asylum Office, and jurisdiction of which was transferred to EOIR after the family was served with a Notice to Appear. He and his family duly appeared at their interview at the Asylum Office.
   e. He was detained at a routine ICE check-in, further showing he is not a flight risk.
   f. He has no criminal history.

5. At the bond hearing, DHS did not put forth any evidence of flight risk or danger, other than pointing out that he had not paid taxes (despite his only obtaining work authorization this year).

6. Yet the Immigration Judge found that the respondent was a flight risk and set the bond at $20,000, as well as imposing an ankle monitor.

7. On these facts, in my experience, a bond of $5,000 or less would be typical.

8. The family cannot afford to pay a $20,000 bond, especially with my client detained and not able to work. Therefore, it is effectively a bond denial.

9. Even if he were somehow able to pay, the Immigration Judge additionally imposed onerous conditions of an ankle monitor and home monitoring by ICE.

10. In my opinion, such prohibitively high bonds and bond denials based on flimsy or no evidence show that, at least in the current environment, Immigration Courts cannot be entrusted with the responsibility of holding bond hearings.

11. Therefore, it must necessarily fall to District Courts to either order release or conduct their own bond hearings as a neutral arbiter.

Dated: January 7, 2026

_s/ Karen L. Hoffmann_
Karen L. Hoffmann, Esq.
ELLENBERG LAW GROUP
1500 JFK Blvd., Suite 1825
Philadelphia, PA 19102
(215) 790-1682
karen@sellenberglaw.com

Marisol Conde-Hernandez, Esq.
NJ Attorney ID: 241772018
96 Summer Ave., Fl. 1
Newark, NJ 07104
(973) 306-4246
marisolch@ericmarklaw.com

**<u>ATTORNEY CERTIFICATION</u>**

1. I am an attorney licensed in the State of New Jersey. I have never been subject to any disciplinary proceedings.
2. I am also licensed to appear before the U.S. District Court for the District of New Jersey, the Court of Appeals for the Second Circuit, and the Court of Appeals for the Sixth Circuit. I regularly appear before various immigration agencies including DHS-USCIS, DHS-ICE, the Department of Justice's Executive Office for Immigration Review (the immigration courts), and the Board of Immigration Appeals.
3. Through this certification I offer an example of the immigration court's lack of a particularized assessment as required by Due Process in bond redetermination hearings ("bond hearing"), even when ordered pursuant to federal court order.
4. This afternoon, one of my clients had a bond hearing before Immigration Judge Shana W. Chen out of the Elizabeth Immigration Court, pursuant to an order issued by the U.S. District Court for the District of New Jersey on my client's habeas petition.
5. My client has continuously lived in the city of New Brunswick, New Jersey since 2009. He has been married for 17 years and has three U.S. citizen children presently 16-, 12-, and 2-years-old. The eldest of his children was diagnosed on the autism spectrum at an early age, is followed by a neurodevelopmental specialist, receives special education services in school, suffers from sensory integration disorder and a coordination problem, and has consistently showed limited cognitive and communication capacity, all for which he requires help with activities of daily living and supervision at all times. My client has lived at the same apartment with his family for several years, has never lived in another township in the State since his 2009 entry, and has worked for the same construction company for several years.
6. The Immigration Judge denied my client's release on bond *only* because she deemed him a flight risk, based on his illegal re-entry in 2009 after complying with a grant of voluntary departure in 2008.
7. The Immigration Judge did NOT find him a danger. She did not consider any amount or any conditions that would assure his appearance at any future court hearings. She *only* considered his aforementioned illegal re-entry- nothing else, despite the over 300 pages of evidence I submitted- to deem him a flight risk and deny bond.

**I swear under the penalty of perjury that the above is true and correct.**

January 8, 2026                    /s/ Marisol Conde-Hernandez
                                   Marisol Conde-Hernandez, Esq.



LAW OFFICES OF NOEMI C. SIMBRON
56 HAMILTON STREET, STE. 2
PATERSON, NEW JERSEY 07505

TEL: (973) 684-4214
FAX: (201) 625-6365
NOEMI.SIMBRON@GMAIL.COM

AFFIDAVIT OF NOEMI C. SIMBRON IN HER CAPACITY AS AN IMMIGRATION ATTORNEY

I have been a member of the New Jersey Bar of Attorneys and of the New Jersey Federal District Court since 2016. I have been a solo practitioner concentrating mainly in representing immigrants before the USCIS and in Removal Proceedings in immigration Court. Before I was admitted to the Bar, I worked as a legal assistant for respected counsels also from our district for 8 years. Accordingly, I have personally handled and participated in documenting hundreds of cases before immigration courts all over the country.

I am writing this statement in good faith to provide the Federal Court with my testimony of the obvious change in impossible standards that immigration judges are currently applying to individuals who are seeking release under bond. Over the course of my career, I have witnessed individuals being provided with a fair opportunity to be released under bond when they are able to show that there is neither a danger to the community nor a flight risk. Whenever an adjudicator immigration judge found that an individual had less than ideal ties to the community, he or she would even grant a larger amount so as to secure their continued appearances at future hearings. This practice seems to have been eradicated since July of 2025.

There seems to be internal instructions to judges to find ways to deny release under bond which were never there before. For instance, I recently represented a 42-year-old Mexican lady, Ms. Eva Alvarez Coeto, before the immigration court (A221-491-571) and this honorable tribunal (2:25-cv-17789-B). Ms. Alvarez entered the United States without inspection in the year 2002. Over the course of her 22-year life span in the U.S., she bore four U.S.C. children (ages 21, 18, 13 and 12)– all of whom resided with her up until the time she was detained. The two youngest children have learning and speech disabilities. Also, she heavily cooperated with the Passaic Police Department in prosecuting the father of her younger children when he showed pornographic videos to her oldest daughter. This participation led to the criminal conviction of this individual, thereby making Ms. Alvarez Coeto also eligible to apply for U visa status. In August of 2025, Ms. Alvarez moved into the father of her older children's father's home following a reduction of her hours at work. The father of her children attempted to kiss Ms. Alvarez against her will and she slapped him once due to unwanted advances before leaving his house. This incident was reported to the police by the father of Ms. Alvarez's children and she was charged with simple assault in the city of Clifton, NJ on or about August 27, 2025. Ms. Alvarez was arrested pursuant to that incident for the first and only time after being present in

the United States for 22 years. She was then referred to immigration detention and is currently being held at the Delaney Hall Detention Center.

On November 20, 2025, this counsel was retained to represent Ms. Alvarez Coeto for a Petition for Habeas Corpus. In preparation for the petition for Habeas Corpus, this counsel requested a bond hearing before the Immigration Court. The immigration Court scheduled a bond redetermination hearing on December 9, 2025. This counsel provided the Court with the children's birth certificates, their medical records showing that the youngest 2 suffer from learning disabilities, evidence of Ms. Alvarez Coeto's work history in the 22 years she has lived here, and a statement from Ms. Alvarez Coeto describing the underlying circumstances leading to the arrest as well as the consequences of her detention, including the fact that custody of the youngest children is being handled by the State's Children's Services because their father is prohibited from approaching them due to the existence of his record as a sexual predator. After hearing legal arguments, Immigration Judge Shana Chen found that she lacked jurisdiction pursuant to Yajure-Hurtado, 29 I&N 216 (BIA 2025) and Maldonado Bautista "not controlling on [that] Court." In the alternative, Judge Chen found that the Respondent "only acknowledged what she could not hide [from the arrest]," and that she was a danger to the community based upon this sole isolated incident in 22 years of history of hard work and raising American children. She also found that Ms. Alvarez Coeto was a flight risk despite her undeniable ties to the community due to the existence of minor children, and her eligibility to obtain status through the U visa statute for indirect victims of crimes as well as through Cancellation of Removal for Nonimmigrants.

In the past, such mild criminal offense would have never been the basis to find an individual such as Ms. Alvarez to be a danger to the community– especially in light of the obvious isolated nature of this offense. Most importantly, the extent of ties that Ms. Alvarez has to this community in her children and the heightened responsibilities of addressing their disabilities *on her own* because the father is under a permanent restraining order and is required to be registered as a sexual predator pursuant to Meghan's Laws is undeniable. In the past, a reasonable finder of fact would have considered that this woman would have a great incentive to pursue relief because her circumstances squarely fit eligibility for U visa status and Cancellations of Removal. Even the most conservative of judges in the country would have at least considered release under higher bond to assure the Respondent's future appearances and to discourage any further potential criminal actions. But this is not the case now. As I waited for my case to be called, I have heard other hearings handled by colleagues who are also being denied release due to absurd reasons which would have never led to denials in the past. This sort of stories about denials are also being shared by numerous of my colleagues within our listserve in the American Immigration Attorneys Association (AILA).

This internal change in the standards for release under bond has to be merely a plot to have immigrants be denied their due process rights because they know individuals who are hard-working and that do not engage in criminal conduct will not be able to withstand being in detention for extended periods of time. They also know that cutting those individuals' access to earn a living will cripple their ability to be represented by counsel causing a flood of them to give up their rights and just ask to voluntarily depart or be deported. And what happens with our

judicial system? Our constitutional rights? Our communities? As this Court is aware, access to bond has been cut by recently published case law to several categories of immigrants who would've been able to be released and to have a real opportunity to exercise their due process rights. For instance, under Qu Li, 29 I&N Dec. 66 (BIA 2025), there are no more bonds for individuals who are deemed "applicants for admissions," that if they had a stop and/or were processed near the border or a port of entry. Under Matter of M-S-, 27 I&N Dec. 509 (A.G. 2019), there is no more access to bond for individuals who were placed in expedited removal, or subjected to administrative deportation, even after they obtain a favorable result of a filter mechanism to be able to see a judge called a credible fear interview. Now, under Yajure-Hurtado, the government sought to  subject every immigrant who may have entered without status at any time to mandatory detention. It is solely because of the intervention of the Federal Courts that this smaller group of individuals– those who are present unlawfully but are not deemed applicants for admission because they were arrested within the territory and are here for a lengthy period of time after their initial entry– have now access to bond when a Petition for Habeas is granted. But, what good does it do if the cases fall back into the same pattern through (presumably) unpublished instructions being received by the immigration judges who are still being mandated to find alternate ways to deny our clients of their due process rights?

Through this letter, I unite my plea to my colleagues to please order our clients released after conducting a fair analysis through this tribunal as we had in the immigration court before the current impossible standards for release were internally mandated. Thank you in advance for your attention.


Respectfully,


/s/ Noemi C. Simbron
Noemi C. Simbron, Esq