**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **PETER FLORES CABALLERO,** ) | **CASE NO.  26-697** |
| ) | |
| Petitioner,              ) | **PETITION FOR WRIT OF HABEAS** |
| ) | **CORPUS UNDER 28 U.S.C. § 2241** |
| vs.                     ) | **AND COMPLAINT FOR INJUNCTIVE** |
| ) | **AND DECLARATORY RELIEF** |
| **TODD LYONS,** Acting   ) | |
| Director,               ) | |
| Immigration and Customs ) | |
| Enforcement, **KRISTI**  ) | |
| **NOEM,**                 ) | |
| Secretary of United     ) | |
| States Department of    ) | |
| Homeland Security,      ) | |
| **KENNETH GENALO,**       ) | |
| Immigration and Customs ) | |
| Enforcement, New York   ) | |
| Field Office Director,  ) | |
| **ANTHONY J. LaROCCO,**   ) | |
| Nassau County Sheriff,  ) | |
| **PAMELA BONDI,** United  ) | |
| States Attorney General, ) | |
| ) | |
| Respondents. | |

1

## I. INTRODUCTION

Petitioner Peter Flores Caballero ("Mr. Flores" or "Petitioner") seeks a Temporary Restraining Order that requires Respondents to release him from custody with an order that he not be re-detained and that no de facto custody in the form of GPS monitoring is imposed. In the alternative, Petitioner seeks an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) in which the burden of proof would be on the Respondents to prove by clear and convincing evidence that Petitioner is a danger to the community or flight risk.

Although Petitioner has been residing in the United States about 20 years prior to being detained by the DHS, he has been subjected to ICE and DOJ's unlawful policy to subject all persons who entered without inspection, even those who have been living in the U.S. for years, and even those already released by DHS, to mandatory detention without an individualized custody determination. See Document 1, Exhibit E, ICE Interim Guidance Regarding Detention Authority for Applicants for Admission; *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025).

While hundreds of U.S. District Courts have already concluded that 8 U.S.C. § 1225(b)(2)(A) does not apply to individuals, like Petitioner, who have been residing in the United States, see Document 1, Exhibit D: Arif Demirel v.

Federal Detention Center Philadelphia, (E.D.Pa 2025) Case 2:25-cv-05488-PD, Appendix A: Appendix of Cases, the need for immediate release after unlawful detention as opposed to ordering a bond hearing after an initial detention is a distinct issue.

Respondents' new policy is plainly contrary to the statutory framework, contrary to decades of agency practice, and violative of Due Process. Petitioner's wrongful detention by the Respondents unquestionably constitutes irreparable injury.

The need for the Court to recognize the unlawful detention issue and to order immediate release is exacerbated by the overwhelming absence of Due Process in the Immigration Courts in 2025. The forum does not provide adequate time for non-citizens to prepare their defenses and disregards decades of law and precedent because immigration judges who fail to abide by the unlawful detain-and-deport policies of the Department of Justice and the Executive branch are terminated from employment. There is no individualized analysis, but rather application of a blanket policy to all individuals.

## II.  **STATEMENT OF FACTS**

Mr. Flores entered the U.S. without inspection in 2006. He has lived in the U.S. since and resides in the tri-state area. Presently he lives with his US citizen wife and his three US

citizen children. Mr. Flores owns a trucking company and he was abducted by ICE after his vehicle broke down and calling for a tow truck. The DHS initiated removal proceedings against Mr. Flores in the Immigration Court based on 8 U.S.C §1229a and an allegation of inadmissibility pursuant to 8 U.S.C. §1182(a)(6)(A)(i) as someone who entered the U.S. without inspection.

Petitioner has no criminal convictions.

### III.  <u>LEGAL ARGUMENT</u>

#### A. THE COURT SHOULD GRANT A TEMPORARY RESTRAINING ORDER

The Court should order Respondents to release the Petitioner from custody immediately with an order that he not be re-detained and that no de facto custody in the form of GPS monitoring is imposed. Only if the Court chooses not to do so should the Court order an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) in which the burden of proof would be on the Respondents to prove by clear and convincing evidence that Petitioner is a danger to the community or flight risk.

To grant this motion, the Court need not reach a final determination on any of Petitioner's claims but simply must determine whether Petitioner has pled the claims sufficiently to allow the Court time to fully adjudicate the pending claims. The

Court considers four factors in determining whether to grant a temporary restraining order: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant will be irreparably harmed by denying the injunction; (3) whether the balance of hardships supports an injunction; and (4) whether granting the injunction is in the public interest. *Nken v. Holder*, 556 U.S. 418 (2009).

These factors weigh heavily in favor of granting a temporary restraining order, because the Petitioner has a high likelihood of success on the merits, the hardship to the Petitioner is devastating, and the government will experience no hardship from abiding by the law and regulations and guidance it has itself promulgated and followed for decades.

1. **<u>Petitioner Is Likely to Succeed on the Merits of The Claim.</u>**

Petitioner is likely to succeed in claiming detention by Respondents without an individualized custody determination is unlawful.

The text, context, and legislative and statutory history of the Immigration and Nationality Act all demonstrate that 8 U.S.C. § 1226(a) governs her detention, as does the overwhelming, near unanimous, conclusions of District Court judges who have reviewed these claims.

a. **The text of the INA demonstrates that Petitioner is not subject to detention and definitely not to mandatory detention.**

Initially, based on the plain wording of the statutes and regulations, once a non-citizen is detained and released by DHS, there is no basis for detention unless the non-citizen violates the conditions of release. 8 U.S.C. § 1226; 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8), 8 C.F.R. §§ 1003.19, 236.1(d), 1236.1(d).

Secondly, hundreds of U.S. District Courts have already concluded that an individualized bond hearing must be granted and that the DHS and DOJ policy denying bond hearings is unlawful. See Document 1, Exhibit D. The only real issue for this Court would be the burden of proof at the bond hearing.

The Supreme Court has held that the Due Process Clause "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. at 693. Throughout the Court's civil detention jurisprudence, it has always required the government to bear the burden of proof. Addington v. Texas, 441 U.S. 418 (1979). Thus, the Court has required that civil detention be the "exception", not the norm. See United States v. Salerno, 481 U.S. 739, 755 (1987) (allowing for pretrial detention in "carefully limited" circumstances).

In Addington v. Texas, 441 U.S. 418 (1979), the Court held that in civil commitment proceedings, the government's burden of proof must be "equal to or greater that the 'clear and convincing' standard" to meet due process guarantees. Addington v. Texas, 441 U.S. at 433. The appellant in Addington, a mental patient who had been committed indefinitely to a state mental hospital, sought review of the decision from the Texas Supreme Court which held that a preponderance of the evidence standard satisfied the due process requirement. Addington v. Texas, 441 U.S. at 421-22.

At a minimum, due process requires "adequate procedural protections" to ensure that the Government's asserted justification for physical confinement "outweighs the individual's constitutionally protected interest in avoiding physical restraint." Zadvydas v. Davis, 533 U.S. at 690 (quoting Kansas v. Hendricks, 521 U.S. 346, 356 (1997)).

In civil detention cases, the Supreme Court "repeatedly has recognized that civil commitment for any purpose constitutes a significant deprivation of liberty." Singh, 638 F.3d 1196, 1204-05 (9th Cir. 2011) (quoting Addington v. Texas, 441 U.S. 418, 425 (1979)) (emphasis in original).

In particular, civil detention is impermissible without an individualized hearing before a neutral decision maker that tests the Government's justification for imprisonment. See

United States v. Salerno, 481 U.S. 739, 750-751 (1987)(upholding civil pretrial detention of individuals charged with crimes only upon individualized findings of dangerousness or flight risk at custody hearings); Foucha v. Louisiana, 504 U.S. 71, 81-83 (1992)(requiring individualized finding of mental illness and dangerousness for civil commitment); Kansas v. Hendricks, 521 U.S. at 357 (upholding civil commitment of sex offenders after jury trial on lack of volitional control and dangerousness).

The Ninth Circuit and other district courts have held that immigration detainees are entitled to bond hearings at which the Federal Government bears the burden to prove by clear and convincing evidence that detainees would be a flight risk or danger to the community. *See e.g.*, Singh, 638 F.3d at 1204-1205; Pensamiento v. McDonald, 315 F.Supp. 3d 684, 692 (D.Mass 2018)(holding that due process requires the burden of proof be placed on the government in custody redetermination hearings for non-criminal aliens); Alvarez Figueroa v. McDonald, Civil Action No. 18-100097-PBS, 2018 U.S. Dist. LEXIS 80781, at *15-16 (D.Mass May 14, 2018)("The Zadvydas Court then cited to criminal pretrial detention and civil commitment cases, making it clear that one important procedural protection for preventive detention is the placement of the burden of proof on the government."; Doe v. Tompkins, Case No. 18-cv-12266-PBS, 2019 U.S. Dist. LEXIS 22616, at *4 (D. Mass. Feb. 12, 2019)(holding

that due process requires that the burden of proving that the respondent is dangerous and is a flight risk be placed on the government in §1226(a) custody redetermination hearings); Diaz-Ortiz v. Tompkins, Case No. 18-cv-12600-PBS, 2019 U.S. Dist. LEXIS 14155, at *3-4 (D. Mass Jan. 29, 2019); Martinez v. Decker, No. 18-cv-6527-JMF, 2018 U.S. Dist. LEXIS 178577, at *13 (S.D.N.Y. Oct. 17, 2018)(concluded that "due process requires the Government to bear the burden of proving that detention is justified at a bond hearing under Section 1226(a)."); Darko v. Sessions, 342 F.Supp.3d 429, 436 (S.D.N.Y 2018)(same; further, "the Court concludes that the government must bear the burden by clear and convincing evidence."); Haughton v. Crawford, 221 F.Supp. 3d 712, 713-17 (E.D.Va. 2016)("the significant deprivation of liberty warrants the robust procedural protections afforded by requiring the government to demonstrate by clear and convincing evidence that petitioner's ongoing detention is appropriate to protect the community and ensure petitioner's appearance at future proceedings."); Portillo v. Hott, 322 F.Supp.3d 698, 2018 WL 3237898, at *8 *n.9 (E.D.Va 2018)(reaffirming Haughton as "good authority").

    **b. <u>Petitioner's Protected Liberty Interest in Conditional Release.</u>**

Petitioner's liberty from immigration custody and interest in avoiding incarceration are protected by the Due Process Clause. *See* <u>Zadvydas v. Davis</u>, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment…lies at the heart of the liberty" that the Due Process Clause protects); <u>Morrissey v. Brewer</u>, 408 U.S. 471, 482-483 (1972) (holding that a parolee has a protected liberty interest in his conditional release); <u>Young v. Harper</u>, 520 U.S. 143, 146-47 (1997); <u>Gagnon v. Scarpelli</u>, 411 U.S. 778, 781-82 (1973).

In <u>Morrissey v. Brewer</u>, 408 U.S. at 481-82, the Supreme Court examined the "nature of the interest" that a parolee has in "[her] continued liberty."  The Court noted that, "subject to the conditions of [her] parole, [a parolee] can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life." *Id.* at 482. "[T]he liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a grievous loss on the parolee and often others." *Id.* Therefore, "[b]y whatever name, the liberty is valuable and must be seen within the protection of the [Fifth] Amendment." *Id.*

This basic principle that individuals have a liberty interest in their conditional release—has been reinforced by both the Supreme Court and the circuit courts on numerous

occasions since Morrissey. *See, e.g.,* Young, 520 U.S. at 152. Procedural due process constrains governmental decisions that deprive individuals of property or liberty interests, as defined by the Due Process Clause of the Fifth Amendment. *See* Mathews v. Eldridge, 424 U.S. 319,332 (1976); *see also* Perry v. Sindermann, 408 U.S. 593, 601-603(1972) (reliance on informal policies and practices may establish a legitimate claim of entitlement to a constitutionally-protected interest). Infringing upon a protected interest triggers a right to a hearing before that right is deprived. *See* Board of Regents of State Colleges v. Roth, 408 U.S. 564, 569-70 (1972).

Civil detention with no foreseeable end infringes upon a protected liberty interest and thus, violates Constitutional rights. *See* Zadvydas, 533 U.S. at 679 ("Freedom from imprisonment lies at the heart of the liberty protected by the Due Process Clause. Government detention violates the Clause unless it is ordered in a criminal proceeding with adequate procedural safeguards or a special justification outweighs the individual's liberty interest. The instant proceedings are civil and assumed to be nonpunitive, and the Government proffers no sufficiently strong justification for indefinite civil detention under this statute.").

Here, Petitioner's release is, in relevant ways, similar to the liberty interest in parole protected in Morrissey. Just as

11

in Morrissey, Petitioner's release "enables [her] to do a wide range of things open to persons'" who have never been in custody or convicted of any crime, including to live at home, work, care for his children, and "be with family and friends and to form the other enduring attachments of normal life." Morrissey, 408 U.S. at 482.

Petitioner is married and has a minor child he cares for. He was employed prior to his detention. Detention clearly denies his interest and right to be with his family and conduct his business.

Further, the immigration court, at the present time, does not provide Due Process complaint hearings. The immigration judges know that if they grant bond or rule in favor of non-citizens, they will be fired. While firing its most experienced judges with histories of ruling in favor of non-citizens in a reasonable number of cases, the DOJ is advertising for "Deportation Judges" to replace them. See Document 1 Exhibit C. Formally or informally, this is a message to its at-will employees. The imposition of the new blanket policy is clearly demonstrated by the descriptions of attorneys about immigration judges suddenly considering facts (e.g. long-term residence in the U.S., steady employment) that have always been positive factors as negative factors, facts that have always been neutral (e.g. traffic offenses, dismissed criminal charges) being

considered as negative factors, and family relationships, (e.g. spouse, fiancé, children, parents) that have always been considered proof of strong ties to the community and lack of risk of flight being completed disregarded. See Document 1 Exhibit A. This arbitrary universal policy being applied to all non-citizens regardless of their individual details is a policy to deny Due Process that requires this Court to order Petitioner's release.

### c. Petitioner's Strong Interest in Liberty Required a Hearing Before Being Incarcerated By ICE

If a petitioner identifies a protected liberty interest, the Court must then determine what process is due. "Adequate, or due, process depends upon the nature of the interest affected. The more important the interest and the greater the effect of its impairment, the greater the procedural safeguards the [government] must provide to satisfy due process." Haygood v. Younger, 769 F.2d 1350, 1355-56 (9th Cir. 1985) (en banc) (citing Morrissey, 408 U.S. at 481-82). To determine the process due in this context, courts use the flexible balancing test set forth in Mathews v. Eldridge, 424 U.S. at 335.

Under the Mathews test, the Court balances three factors: "first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of

13

such interest through the procedures used, and the probative value, if any, of additional or substitute procedural safeguards; and finally the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." Haygood, 769 F.2d at 1357 (citing Mathews 424 U.S. at 335).

Importantly, the Supreme Court "usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty or property." Zinermon v. Burch, 494 U.S. 113, 127, 128 (1990) (emphasis in original).

Here, the Mathews factors all favor Petitioner and establish that the government was required to provide Petitioner notice and a hearing prior to any incarceration.

First, Petitioner's private interest in liberty is substantial. *See* Foucha v. Louisiana, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause."). The Supreme Court has recognized that individuals released from serving a criminal sentence have a "valuable" liberty interest—even if that freedom is lawfully revocable. Morrissey, 408 U.S. at 482; Young, 520 U.S. at 152. The interest for an individual awaiting civil immigration proceedings is even weightier. *See, e.g.,* Ortega v. Bonnar, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019)

14

("[G]iven the civil context" of immigration detention, a noncitizen's interest in release on bond is "arguably greater than the interest of parolees in Morrissey."). Here, Petitioner's interest is even more compelling than that of the average noncitizen. He has resided in the United States for 23 years, is raisig three children with his fiancé, owns a business, and has no criminal history.

By contrast, the value of a deprivation hearing before a neutral decision-maker is high. "A neutral judge is one of the most basic due process protections." Castro-Cortez v. INS, 239 F.3d 1037, 1049 (9th Cir. 2001), abrogated on other grounds by Fernandez-Vargas v. Gonzales, 548 U.S. 30 (2006).

The record shows that Petitioner was unlawfully detained and is in removal proceedings pursuant to 1226(a) without a bond hearing pursuant to DHS-ICE and EOIR's unlawful policies.

Third, the government's interest in detaining Petitioner without a hearing is low. The government cannot plausibly assert it has any need for detaining Petitioner now, when he has lived in the community with his family and employment and no criminal history for 20 years. Further, providing Petitioner a hearing before this Court (or another neutral decisionmaker) to determine whether there is evidence that Petitioner currently poses any risk of flight or danger to the community imposes a de minimis, if any, burden on the government. Such a hearing is far

15

less costly and less burdensome for the government than keeping Petitioner detained at what the Ninth Circuit described as a "staggering" cost to the public of $158 each day per detainee in 2017, "amounting to a total daily cost of $6.5 million." Hernandez v. Sessions, 872 F.3d 976, 996 (9th Cir. 2017).

**2. Petitioner Will Suffer Irreparable Harm in the Absence of a TRO.**

In the absence of a TRO, Petitioner will continue to be unlawfully detained by Respondents, separated from family, torn away from his employment, and severely handicapped in preparing for removal proceedings.

**3. The Balance of Equities Tips in Petitioner's Favor and a TRO is in the Public Interest.**

These factors are considered because the government is a party. Nken v. Holder, 556 U.S. 418, 435 (2009). These factors also weigh heavily in favor of granting a preliminary injunction. Because the policy preventing Petitioner from obtaining bond "is inconsistent with federal law, . . . the balance of hardships and public interest factors weigh in favor of a preliminary injunction." Moreno Galvez v. Cuccinelli, 387 F. Supp. 3d 1208, 1218 (W.D. Wash. 2019) (Moreno I); *see also* Moreno Galvez v. Jaddou, 52 F.4th 821, 832 (9th Cir. 2022) (affirming in part permanent injunction issued in Moreno II and

16

quoting approvingly district judge's declaration that "it is clear that neither equity nor the public's interest are furthered by allowing violations of federal law to continue"). *See* Doe v. Noem, No. 25-00023, 2025 WL 1161386, at *7 (W.D. Va. Apr. 21, 2025) ("[W]hile the Executive Branch has broad authority to enforce immigration laws, there is no public interest in allowing them to act outside the law.").

Based on the foregoing, the balance of these remaining factors weighs in favor of granting the requested interim relief.

### B. PRUDENTIAL EXHAUSTION IS NOT REQUIRED

Prudential exhaustion does not require Petitioner to be forced to endure the very harm they are seeking to avoid by requesting and appealing the IJ bond orders to the Board of Immigration Appeals and waiting many months for a decision from the Board.

"[T]here are a number of exceptions to the general rule requiring exhaustion, covering situations such as where administrative remedies are inadequate or not efficacious, . . . [or] irreparable injury will result . . ." Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004) (citation omitted).

In addition, a court may waive an exhaustion requirement when "requiring resort to the administrative remedy may occasion undue prejudice to subsequent assertion of a court action."

17

<u>McCarthy v. Madigan</u>, 503 U.S. 140, 146-47 (1992), superseded by statute on other grounds as stated in <u>Booth v. Churner</u>, 532 U.S. 731, 739-41 (2001). "Such prejudice may result . . . from an unreasonable or indefinite time frame for administrative action." *Id.* at 147 (citing cases).

Here, the exceptions regarding irreparable injury and agency delay apply and warrant waiving any prudential exhaustion requirement.

## 1. **Futility**

Futility is an exception to the prudential exhaustion requirement. Petitioner is subject to *Matter of Yajure Hurtado* where the Board held that all noncitizens who entered the United States without admission or parole are subject to detention under § 1225(b)(2)(A) and are ineligible for bond hearings.

Given these facts, any request to the Immigration Judge for a bond hearing, as well as any subsequent appeals to the Board, would be futile.

## 2. **Irreparable injury**

Irreparable injury is an exception to any prudential exhaustion requirement. Each day that Petitioner is mandatorily detained is one in which statutory and constitutional rights are being violated. Similarly situated district courts have repeatedly recognized this fact. As one court has explained,

"because of delays inherent in the administrative process, Board review would result in the very harm that the bond hearing was designed to prevent: prolonged detention without due process." Hechavarria v. Whitaker, 358 F. Supp. 3d 227, 237 (W.D.N.Y. 2019) (internal quotation marks omitted). Indeed, "if Petitioner is correct on the merits of [her] habeas petition, then Petitioner has already been unlawfully deprived of a [lawful] bond hearing[,] [and] . . . each additional day that Petitioner is detained without a [lawful] bond hearing would cause [her] harm that cannot be repaired." Villalta v. Sessions, No. 17-CV-05390-LHK, 2017 WL 4355182, at *3 (N.D. Cal. Oct. 2, 2017) (internal quotation marks and brackets omitted); *see also* Cortez v. Sessions, 318 F. Supp. 3d 1134, 1139 (N.D. Cal. 2018) (similar).

## IV.  CONCLUSION

For the foregoing reasons, the motion for a temporary restraining order should be granted.

Respectfully submitted,

Date: February 7, 2026

By: /s/ Eric M. Mark
Eric M. Mark, Esq.
Law Office of Eric M. Mark
96 Summer Ave., Fl. 1
Newark, NJ 07104
Tel: (973) 306-4246
Email: EricM@ericmarklaw.com

Attorney for Petitioner

19